■ In the Matter of MARIE FLYNN, Petitioner, v CHARLES W. BATES, as Commissioner of the Department of Social Services of Westchester County, et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent State commissioner, dated September 23, 1977 and made after a statutory fair hearing, which affirmed the determination of the local agency denying petitioner's application for medical assistance. Determination confirmed and petition dismissed on the merits, without costs or disbursements. In 1974 the parents of Marion Gunn were aged and ailing and she had them brought from Ohio to her home in Rye, New York, in order to be able to take better care of them. Within a short time thereafter, on January 1, 1975, the father, Reuben, died testate, leaving as his sole beneficiary his daughter, Marion, and making no provision at all for petitioner Marie, his wife of some 54 years. On January 10, 1975, Marie was placed, as a private patient, in a nursing home and, seven days later, she signed a formal written consent to the probate of her late husband's will. Although there is some dispute as to the precise amounts involved in

Reuben's estate, it is conceded that the gross taxable assets amounted to $110,621.75. Petitioner contends that her net elective share under EPTL 5-1.1 would have been approximately $26,930.41. However, she never exercised her right of election against the will and the net estate thus passed to her daughter Marion. It is conceded by petitioner that her failure to elect constituted a "reasoned judgment" not to "frustrate the desire of the decedent to pass on some assets to their daughter". In 1975 three applications for medical assistance were submitted by Marion on behalf of the petitioner and all were denied on the ground that the petitioner's assets, consisting of bank accounts, stock certificates, proceeds of life insurance policies, Social Security benefits and Veterans Administration pensions exceeded her medical expenses and that she had failed to utilize those assets. Although the record is somewhat confusing, it does appear that on May 3, 1977, after reconsideration, the agency again denied petitioner's application and that thereafter upon petitioner's demand, a fair hearing was held. There is now before this court for review a determination of the respondent State commissioner dated September 23, 1977 which affirmed the local agency's denial of the application upon the ground that "the action by the [petitioner] in failing to exercise her right of election in effect constituted a transfer of her share of the estate, and the record clearly establishes that it was made for the purpose of qualifying for medical assistance." We find in the record substantial evidence to amply support the commissioner's determination and hence we confirm, but not upon the grounds advanced by him. Rather we confirm upon the much broader principle of law which forms the basis of the entire Social Services Law in the State of New York. That law finds its roots in the State Constitution itself. Section 1 of article XVII provides: "The aid, care and support of the *needy* are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine." (Emphasis supplied.) An examination of relevant sections of the Social Services Law enacted to supplement article XVII of the Constitution is interesting and enlightening. Section 363 declares it to be a matter of public concern to promote the public health and welfare. The following restrictive language of that section is significant: "In furtherance of such goal, a comprehensive program of medical assistance *for needy persons* is hereby established to operate in a manner which will assure a uniform high standard of medical assistance throughout the state." (Emphasis supplied.) In describing the character and adequacy of medical assistance, subdivision 1 of section 365-a of the Social Services Law provides, in part: "The amount, nature and manner of providing medical assistance for *needy* persons shall be determined by the public welfare official". (Emphasis supplied). It is quite clear from the foregoing that medical assistance is specifically and severely limited to those "needy persons" who qualify under the applicable provisions of the Social Services Law. This is indeed a far cry from petitioner's inquiry, "Is it reasonable for Mrs. Flynn [petitioner] to take property away from her daughter not for her own personal benefit but for the benefit of a governmental program that she has every right to rely upon for assistance?" The obvious answer is that the petitioner may not knowingly and intelligently waive her legal right to a sizeable sum of money and then present herself as "a needy person". That this is so becomes apparent from a reading of section 366 (subd 2, par [b]) of the Social Services Law, which reads in part: "In establishing standards for determining eligibility for and amount of such assistance, the department shall take into account only such income and resources, in accordance with

federal requirements, as *are available to the applicant"*. (Emphasis supplied.) In *Matter of Barie v Lavine* (48 AD2d 36, 38) the Third Department in upholding petitioner's 30-day disqualification from public assistance benefits because of her refusal of a job referral, had this to say: "While the objective facts of hunger and a lack of sufficient assets to provide for one's own food, shelter and clothing establish prima facie a 'needy' person, nevertheless, the word 'needy' does not in its ordinary meaning encompass a person who is creating the need by consistently avoiding or refusing to provide for his needs" (see, also, *Matter of Williams v Toia,* 61 AD2d 333). It is thus clearly indicated that the pressing test for eligibility is the *availability* of assets rather than those assets actually possessed (see *Matter of Williams v Toia, supra).* It is conceded that there was available to petitioner, through her right to elect against provisions of the will, a sum in excess of $26,000. It cannot be disputed that a widow's right to elect against a will is a personal right and, as such, it is not a present resource or asset of a surviving spouse. It is a property right *in posse* and not *in esse* and comes into existence only when properly exercised pursuant to the terms of the EPTL. It is therefore not necessary, through twisted and tortured logic, to conclude that a failure to exercise that right is a transfer of property within the provisions of section 366 (subd 1, par [e]) of the Social Services Law. We conclude that there is substantial evidence in the record to support the determination of the State commissioner for the reasons set forth herein and that the determination must therefore be confirmed (see *300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176). Hopkins, J. P., Damiani, Titone and O'Connor, JJ. concur.