In the Matter of CITY SCHOOL DISTRICT OF CITY OF ELMIRA, Petitioner, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents.

Third Department, December 29, 1988

36

### APPEARANCES OF COUNSEL

*Sayles, Evans, Baryton, Palmer & Tifft (Edward B. Hoffman* of counsel), for petitioner.

*Martin L. Barr (Jerome Thier* of counsel), for New York State Public Employment Relations Board, respondent.

*Bernard F. Ashe (Ivor R. Moskowitz* of counsel), for Elmira Teachers Association, Local 2638, NYSUT, AFT, AFL-CIO, respondent.

*Norman H. Gross (Henry F. Sobota* of counsel), for New York State School Board Association, *amicus curiae.*

### OPINION OF THE COURT

HARVEY, J.

In April 1986, the Legislature enacted the Excellence in Teaching Apportionment Program (hereinafter EIT) as part of its aid to localities budget bill *(see,* Education Law § 1950 [15] [a]; § 3602 [27], as added by L 1986, ch 53, §§ 20, 49). The statutory scheme allows local school districts to apply for special funds which are to be used to supplement the salaries of eligible employees. On September 9, 1986 petitioner's Board of Education voted not to apply for EIT funds provided under

Education Law § 3602 (27). The decision was based on the fact that acceptance of EIT funds would have caused petitioner to pay over two years approximately $100,000 in increased Social Security taxes, retirement system assessments and "fringe benefits". Also, a collective bargaining agreement for the years 1985 through 1990 was already in existence which provided substantial salary increases.

Respondent Elmira Teachers Association (hereinafter ETA) demanded that petitioner negotiate with it over whether to apply for EIT funds. Petitioner refused to negotiate and ETA filed an improper practice charge with respondent Public Employment Relations Board (hereinafter PERB). The parties waived a hearing on the charge and submitted the controversy to an Administrative Law Judge (hereinafter ALJ) of PERB upon a stipulated record. The ALJ sustained the charge, concluding that the decision to apply for EIT funds was a mandatory subject of collective bargaining and that petitioner violated Civil Service Law § 209-a (1) (d) by refusing to negotiate this issue. The ALJ ordered petitioner to negotiate in good faith. PERB ultimately affirmed the determination of the ALJ. Petitioner subsequently commenced this CPLR article 78 proceeding seeking to have PERB's determination annulled. Supreme Court transferred the proceeding to this court for review.

■ Initially, we note that this matter involves only a question of statutory interpretation and not a substantial evidence question. Supreme Court therefore improperly transferred the proceeding to this court. Nonetheless, since the record is sufficient to determine the legal issue, we will retain the proceeding (see, CPLR 7804 [g]; *Matter of Ideal Corp. v New York State Tax Commn.*, 132 AD2d 419, 422, n 2, *lv denied* 71 NY2d 804; *Matter of Consumer Protection Bd. v Public Serv. Commn.*, 85 AD2d 321, 323, *appeal dismissed* 57 NY2d 673).

■ Resolution of the legal issue involved in this proceeding turns upon the interpretation of Education Law § 3602 (27) and whether the Legislature intended for the decision to apply for EIT funds to be a matter for collective bargaining. As with any proceeding involving statutory interpretation by an agency, a prefatory issue involves the degree of deference, if any, to be given by the court to the agency's interpretation. Although interpretations by PERB of the Taylor Law (Civil Service Law art 14) are accorded judicial deference (see, e.g., *Matter of Incorporated Vil. of Lynbrook v New York State Pub.*

*Employment Relations Bd.,* 48 NY2d 398, 404), such deference does not apply to PERB's interpretation of other laws *(Matter of Town of Mamaroneck PBA v New York State Pub. Employment Relations Bd.,* 66 NY2d 722, 724; *see, Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459). Since it is the Education Law which is being interpreted, a statute for which PERB has no particular expertise, PERB's interpretation is not entitled to any great weight.

The statute in issue, Education Law § 3602 (27) (a) provides, in pertinent part, as follows: "In addition to any other apportionment under this section, upon application a school district shall be eligible for an excellence in teaching apportionment to improve teacher salaries. * * * All funds made available to a school district pursuant to this subdivision shall be distributed * * * in accordance with this subdivision and shall be in addition to salaries heretofore or hereafter negotiated or made available * * *. In school districts where the teachers are represented by certified or recognized employee organizations, all salary increases funded pursuant to this subdivision shall be determined by separate collective negotiations conducted pursuant to the provisions and procedures of article fourteen of the civil service law, notwithstanding the existence of a negotiated agreement between a school district and a certified or recognized employee organization." Interpretation of a statute begins with an analysis of the literal language of the statute *(Matter of Atlantic Cement Co. v Williams,* 129 AD2d 84, 89; *see, We're Assocs. Co. v Cohen, Stracher & Bloom,* 65 NY2d 148, 151). A statute should not, of course, be interpreted in such a fashion that the clear legislative intent is eroded *(see, Matter of Allstate Ins. Co. v Libow,* 106 AD2d 110, 114, *affd* 65 NY2d 807; *American Lodge Assn. v East N. Y. Sav. Bank,* 100 AD2d 281, 285).

The parties agree that the legislative history sheds little light on the legislative intent with respect to the current controversy. Looking to the language of the statute, the Legislature expressly provided that a school district must negotiate over the *distribution* of EIT funds. At the same time, the Legislature made no reference to any duty to negotiate over the decision whether to *apply* for the funds. We find no evidence in the legislative history to support reading into the statute a duty to negotiate over the decision whether to apply for funds. The Legislature considered what role negotiations should play with respect to EIT funds and did not include a requirement that the decision whether to apply for funds be

subject to negotiation. Clearly, when the Legislature was considering the extent to which negotiations over EIT funds would be required, it could have extended the duty to negotiate to the application decision if it had so intended *(cf., Eaton v New York City Conciliation & Appeals Bd.,* 56 NY2d 340, 346). Under the circumstances here, where there is no legislative history nor past practices indicating otherwise, the judiciary or an administrative agency should not read into the statute a requirement to negotiate as to the application decision where it has been left out by the Legislature.

LEVINE, J. (dissenting). It seems clear that an application for funding to supplement the *salaries* of teachers and other professional employees of local school districts, available under the newly created Excellence in Teaching Apportionment Program (hereinafter EIT) (Education Law § 1950 [15]; § 3602 [27], as added by L 1986, ch 53, §§ 20, 49), could rationally be considered by respondent Public Employment Relations Board (hereinafter PERB) as a matter directly affecting terms and conditions of employment, subject to mandatory collective bargaining *(see,* Civil Service Law § 204 [2]). Indeed, the courts have held that the statutory phrase, terms and conditions of employment, is to be given broad application, subject only to limitations which are explicit in another statute *(Board of Educ. v Associated Teachers,* 30 NY2d 122, 129), or, at least, plainly and clearly set forth in statute or decisional law *(Syracuse Teachers Assn. v Board of Educ.,* 35 NY2d 743, 744). When issues affecting terms and conditions of employment arise during the term of a collective bargaining agreement which are not covered by the agreement, they are, nevertheless, subject to collective bargaining *(see, Matter of City of Poughkeepsie v Newman,* 95 AD2d 101, 103, *appeal dismissed* 60 NY2d 859, *lv denied* 62 NY2d 602).

It follows from the foregoing that, without something in statutory or decisional law plainly and clearly excepting negotiations as to whether petitioner should apply for EIT funding to supplement salaries, PERB's determination should be upheld. The majority's decision alludes to no such plainly worded limitation. Instead, it reasons that, because the Legislature specifically provided that "all salary increases funded pursuant to this subdivision shall be determined by *separate* collective negotiations conducted pursuant to the provisions and procedures of article fourteen of the civil service law" (Education Law § 3602 [27] [a] [emphasis supplied]), the ex-

press inclusion of a duty to bargain over the distribution of EIT funds, once applied for, implies an intent to exclude a duty to bargain over whether a school district should apply for such funds in the first instance.

The majority has, thus, based its decision on the principle of statutory construction, *expressio unius est exclusio alterius* (McKinney's Cons Laws of NY, Book 1, Statutes § 240). This, in our view, is erroneous on at least two grounds. First, it flies in the face of both the general legislative policy of the Taylor Law (Civil Service Law art 14), previously discussed, to require conditions of employment (except as to matters explicitly excluded), and of the "indisputable goal of the entire EIT program * * * to provide some relief for that class of professional educators in the public schools whose compensation suffered from the budgetary constraints experienced in general by local school districts" *(Schneider v Ambach,* 135 AD2d 284, 287). The principle of construction relied upon by the majority is nothing more than an aid in interpretation. It must not be utilized to override the purpose of an enactment or defeat the legislative intent *(see, Matter of John P. v Whalen,* 54 NY2d 89, 96; *Matter of Auburn Police Local 195 v Helsby,* 62 AD2d 12, 16, *affd* 46 NY2d 1034; *Erie County v Whalen,* 57 AD2d 281, 284, *affd* 44 NY2d 817).

Second, the doctrine of *expressio unius est exclusio alterius* is in any event inappropriate here to imply a legislative intent to exclude the duty to bargain over applications for EIT funds. Logically, the negative implication drawn here by the majority would only be valid if the statutory language under analysis evinced a legislative intent to create a new duty to bargain on the part of school districts over distribution to eligible educators of EIT funds once received by a district. However, it can hardly be doubted that the apportionment of the funds among eligible teachers would have been the subject of mandatory negotiations under the Taylor Law, even in the absence of a specific provision in the EIT legislation. The more rational interpretation of the statutory language in question is that it was intended to provide for "separate" collective bargaining over the allocation of EIT funds and, thus, to avoid interference with the process of negotiations between school districts and employee unions over the general terms and conditions of employment. Thus construed, there would be no conflict between the specific EIT legislation and the general policies of the Taylor Law, necessary to support the exclusionary inference drawn by the majority.

Since we are equally unpersuaded by the alternative contentions of petitioner, we would confirm PERB's determination and dismiss the petition.

CASEY and YESAWICH, JR., JJ., concur with HARVEY, J.; MAHONEY, P. J., and LEVINE, J., dissent and vote to affirm in an opinion by LEVINE, J.

Determination annulled, and petition granted, with costs.