In the Matter of MAY TUTINO, by Her Guardian ad Litem, THOMAS PORTELA, Petitioner, v CESAR PERALES, as Commissioner of the New York State Department of Social Services, et al., Respondents.

Second Department, January 16, 1990

APPEARANCES OF COUNSEL

*Certilman Balin Adler & Hyman (Murray Greenberg* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Mary Lou Posner* of counsel), for Commissioner of New York State Department of Social Services, respondent.

**OPINION OF THE COURT**

KOOPER, J.

The issue in this proceeding is whether the New York State Commissioner of Social Services may require a person who is both the settlor and income beneficiary of an inter vivos trust to execute an assignment of her right to seek an allowance from principal pursuant to EPTL 7-1.6 (b) as a prerequisite to the granting of medical assistance. We answer

the foregoing question in the affirmative and, accordingly, confirm the determination of the respondent Commissioner of the New York State Department of Social Services.

## I.

On April 24, 1984, the settlors May and Vincent Tutino established an irrevocable inter vivos trust, which apparently contained substantial assets. Under the terms of the trust, the trustee is to "hold, invest and reinvest the Trust Estate, collect the income therefrom" and pay and apply all of the net income to settlors May and Vincent Tutino. Paragraph SECOND of the trust recounts that one of its purposes is to preserve the assets of the trust so that the income generated therefrom shall be sufficient to pay "all of the ordinary living expenses" of the settlors. The term "living expenses" is subsequently defined as, "all of the foreseeable costs of living * * * including, but not limited to: food, shelter, fuel for heating, cooking and transportation, utilities, clothing, automobiles, travel, entertainment, and the like". The trust instrument further directs that upon the deaths of the settlors, the corpus is to be distributed to the settlors' children and grandchildren. The settlors' two sons, Victor and Vincent, Jr., were appointed to act as cotrustees pursuant to paragraph SEVENTH of the trust, and as conservators in the event the settlors suffered from "mental impairment".

Paragraph FOURTH defines the objectives of the trust, in relevant part, by declaring that, "[i]t is the primary purpose of the Trust Agreement to be part of an estate plan whereby upon the death of the Grantors, the Trust assets will be distributed in the manner stated". The paragraph further states that, "[i]t is the intent of the Grantors that upon the termination of this Trust, the residuary beneficiaries shall receive the maximum possible amount of principal and accumulated income". Although paragraph FIFTH purports to divest the courts of authority to direct an invasion of principal contrary to the decision of the trustee, the trust does not prohibit an invasion of corpus and is silent with respect to the trustee's power to authorize an allowance from principal on behalf of the settlor.

## II.

In October 1984 Vincent Tutino, Sr., died, and shortly thereafter, the petitioner May Tutino, apparently unable to

handle her affairs, was placed in the South Shore Nursing Home. In May 1986 an application for medical assistance was filed on the petitioner's behalf by her son, Victor Tutino. By notice dated June 25, 1986, the Nassau County Department of Social Services denied the application stating, "[i]n accordance with 18 NYCRR 360.4,[1] you failed to pursue a potentially available resource. Under EPTL 7-1.6 (b) you can seek an invasion of the Trust principal as you are a beneficiary of the said Trust". The notice further recounted that the petitioner's attorney had telephoned the agency and stated that he would not petition the Surrogate's Court for permission to invade the corpus pursuant to EPTL 7-1.6. Significantly, under EPTL 7-1.6 (b), applicable only to trusts created or declared after June 1, 1966, "an allowance from corpus for an income beneficiary's education or support may be made if the latter is not sufficiently provided for, irrespective of whether the beneficiary is ultimately entitled to a share of corpus and irrespective of whether other beneficiaries consent" (Rohan, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL 7-1.6, 1989 Pocket Part, at 98; *see also, Matter of Hoelzer v Blum,* 93 AD2d 605, 611; *Matter of Damon,* 71 AD2d 916).[2]

---

1. 18 NYCRR former 360.4 (a) (1), applicable at the time of the Commissioner's determination, provided, "[a]ll income and resources actually or potentially available to the applicant or recipient, as determined by a review of the application for medical assistance, State-prescribed form, and as revealed in the personal interview, shall be evaluated and a decision reached as to their availability. Only such income and/or resources as are determined to be available to the applicant, shall be considered in determining his/her eligibility for medical assistance. However, the applicant shall be required as a condition of eligibility to pursue any potential income or resources not currently available. As soon as such income and/or resources become available, the applicant's eligibility shall be reevaluated. Such available income and resources include but are not limited to the respective income and resources set forth on such form." Effective March 1, 1989, 18 NYCRR former 360.4 (a) (1) was repealed and a new part 360 was added. The newly added provisions effect no substantive changes in the regulations pertinent to the issues on appeal *(compare,* 18 NYCRR former 360.4 [a] [1], *with* present 18 NYCRR 360-2.3 [c], *and* 360-3.2 [2]).

2. EPTL 7-1.6 (b) states in full: "Notwithstanding any contrary provision of law, the court having jurisdiction of an express trust, hereafter created or declared, to receive income from property and apply it to the use of or pay it to any person, unless otherwise provided in the disposing instrument, may in its discretion make an allowance from principal to any income beneficiary whose support or education is not sufficiently provided for, whether or not such person is entitled to the principal of the trust or any part thereof; provided that the court, after a hearing on notice to all those beneficially interested in the trust in such manner as the court may direct, is satisfied that the original purpose of the creator of the trust cannot be carried out and that such allowance effectuates the intention of the creator."

Although subdivision (a) of the statute similarly empowers the court to entertain an application for invasion of the trust corpus, the consent of the beneficiaries is required pursuant to that provision.

■■ Subsequently, the petitioner sought review of the local agency's determination and requested a fair hearing. After the fair hearing was conducted, the Commissioner of the New York State Department of Social Services issued a decision reversing the local agency's determination. In its determination, the State Commissioner observed that since the terms of the trust purported to divest the courts of the power to direct invasion of the principal, no purpose would be served by requiring that the trustee petition the Surrogate's Court for permission to invade the trust corpus, especially since he had previously declined to do so. The State Commissioner found, however, that the agency could request that the petitioner herself execute "an assignment of her rights, if any," to petition the Surrogate's Court for an allowance from the principal. Thereafter, and pursuant to the State Commissioner's decision, the local agency requested such an assignment from the petitioner's son and attorney-in-fact, Victor Tutino, in response to which Mr. Tutino advised the agency that no assignment would be forthcoming. On February 20, 1987, the petitioner's application for medical assistance was again denied. A second fair hearing was held with regard to the foregoing denial, resulting in the determination under review dated September 1, 1987, upholding the local agency's denial of assistance. The petitioner commenced a proceeding pursuant to CPLR article 78 to review that determination, and the Supreme Court, Nassau County, transferred the proceeding to this court pursuant to CPLR 7804 (g).[3] We confirm.

---

■ **3.** Although the Supreme Court transferred the instant proceeding to this court pursuant to CPLR 7804 (g), a review of the petition discloses that the issues raised therein involve only questions of law, which should have been resolved by the Supreme Court. Where, however, the record is sufficient to facilitate review of the issues tendered, as it is here, the Appellate Division may entertain the proceeding and dispose of the issues raised therein (see, e.g., Matter of Schechter v New York State Employees' Retirement Sys., 62 AD2d 543, 544, affd 46 NY2d 983; see also, Kutas v New York State Employees' Retirement Sys., 146 AD2d 542, 544; Matter of Consumer Protection Bd. v Public Serv. Commn., 85 AD2d 321, 323; Matter of Steinberg v New York State Dept. of Social Servs., 90 Misc 2d 547, 548).

III.

■ Section 1 of article XVII of the NY Constitution states that "[t]he aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine" *(see also,* Social Services Law § 363; *Matter of Flynn v Bates,* 67 AD2d 975, 977).

In conformity with the foregoing constitutional mandate, Social Services Law § 365-a (1) directs that, "[t]he amount, nature and manner of providing medical assistance for needy persons shall be determined by the public welfare official" in accordance with the regulations of the New York State Department of Social Services. The Social Services Law and pertinent regulations require consideration of only income and resources "available" to the applicant in determining whether an individual is needy and thus eligible for assistance *(see,* Social Services Law § 366 [2] [b]; 18 NYCRR former 360.4, 352.23 [a]; *Matter of Dumbleton v Reed,* 40 NY2d 586; *Matter of Flynn v Bates, supra).* It has been observed, however, that, "[t]he word 'needy' does not encompass a person who may create that need by failing or refusing to provide for her own needs" *(Matter of Harrington v Blum,* 117 Misc 2d 623, 624; *see also, Matter of Flynn v Bates, supra; Matter of Steinberg v New York State Dept. of Social Servs.,* 90 Misc 2d 547, 549). Notably, 18 NYCRR former 360.4 (a) (1), applicable at the time the State Commissioner made his determination, provides that an applicant shall be required as a condition to eligibility to "pursue any potential income or resources not currently available" *(see also,* present 18 NYCRR 360-2.3 [c]; 360-3.2). As this court has observed, the burden of proving eligibility for medical assistance is on the applicant *(see, Matter of Hoelzer v Blum,* 93 AD2d 605, 609, *supra; see also, Matter of Moffett v Blum,* 74 AD2d 625; *Matter of Sherman v Sanfilippo,* 74 AD2d 675).

IV.

■■ When considered within the context of the foregoing principles, the State Commissioner's determination was neither arbitrary nor capricious. There can be no question that, as a threshold matter, the provisions of EPTL 7-1.6 (b) are applicable to the trust created by the petitioner, thereby empowering the court to entertain an application on her

behalf for an allowance from the principal *(see,* 9A Rohan, NY Civ Prac-EPTL ¶ 7-1.6 [2]). The petitioner's inability to provide for her support and medical needs clearly constitutes a circumstance in which EPTL 7-1.6 (b) was intended to apply. Since, pursuant to EPTL 7-1.6 (b), the trust corpus is a potentially available resource within the meaning of the applicable regulations governing eligibility for assistance *(see,* 18 NYCRR former 360.4 [a] [1]), the State Commissioner was authorized to request that the petitioner—or someone capable of doing so on her behalf—execute an assignment of whatever right she might possess to seek an allowance from principal *(cf., Matter of Steinberg v New York State Dept. of Social Servs.,* 90 Misc 2d 547, *supra; see also, Matter of Harrington v Blum, supra).* Moreover, the determination of the State Commissioner is not "coercive" within the meaning of the authorities relied on by the petitioner *(see, e.g., Matter of Surut,* 141 Misc 2d 1005, 1007). In *Surut,* the Surrogate concluded, *inter alia,* that consent to an invasion obtained by the Nassau County Department of Social Services from the presumptive remainderman of a testamentary trust *(see,* EPTL 7-1.6 [a]) was invalid as coercive where the remainderman was in no sense obligated to support the income beneficiary for whose benefit the allowance from principal was sought *(Matter of Surut,* 141 Misc 2d 1005, 1007, *supra).* In contrast, there can be no dispute that the petitioner is obligated in the first instance to provide for her own support *(see, Matter of Harrington v Blum, supra).* Accordingly, the requested assignment, here sought in order to provide for the petitioner's own medical expenses, is not invalid as "coercive". Further, the State Commissioner's determination does not compel the trustees to violate their fiduciary obligations inasmuch as the assignment requested derives exclusively from the statutory right vested in the petitioner pursuant to EPTL 7-1.6 (b) and, therefore, does not implicate the exercise of the trustee's discretionary powers.

Contrary to the petitioner's contentions, cases in which the provisions of testamentary trusts have been construed as precluding an allowance from the principal are not dispositive of the issue presented in this proceeding *(see, e.g., Matter of Escher,* 94 Misc 2d 952, *affd* 75 AD2d 531, *affd* 52 NY2d 1006; *Matter of Hoelzer v Blum,* 93 AD2d 605, *supra; Matter of Surut,* 141 Misc 2d 1005, *supra; Matter of Ross,* 96 Misc 2d 463). A review of these authorities discloses that their holdings have been influenced, *inter alia,* by (1) the testamentary

nature of the trust and the heightened sensitivity typically accorded the intent of the testator in that context *(see, Matter of Escher, supra,* at 961), (2) the fact that the testator would ordinarily have had no obligation to otherwise support the income beneficiary at the time the application for assistance is made *(see, Matter of Surut, supra,* at 1007; *Matter of Escher, supra,* at 960), and (3) the related inference that the testator, in conformity with contemporary perceptions of assistance as a type of entitlement, would not have consented to an invasion of principal prior to the exhaustion of available public funds *(see, Matter of Escher, supra,* at 958-960; *Matter of Hoelzer v Blum, supra; Matter of Maul v Fitzgerald,* 78 AD2d 706; *Matter of Damon, supra; Matter of Surut, supra;* 9A Rohan, NY Civ Prac-EPTL ¶ 7-1.6 [4], [5]). It is apparent that the foregoing considerations are largely inapposite where the settlor herself is the individual whose medical needs prompted the application for assistance *(cf., Matter of Harrington v Blum, supra; Matter of Roberts [New York City Health & Hosps. Corp.],* 61 NY2d 782, 783-784).

## V.

Since a viable remedy exists whereby the petitioner or someone on her behalf can apply for or otherwise pursue the trust corpus as a potential resource *(see, Matter of Hoelzer v Blum, supra; cf., Matter of Flynn v Bates, supra;* 18 NYCRR former 360.4 [a] [1]), the Commissioner's determination to withhold benefits until such a remedy may be pursued is neither arbitrary nor capricious under the circumstances presented *(see, Matter of Flynn v Bates, supra; Matter of Steinberg v New York State Dept. of Social Servs., supra; cf., Matter of Ross, supra).* Accordingly, the determination is confirmed, and the proceeding is dismissed on the merits, with costs.

BROWN, J. P., EIBER and ROSENBLATT, JJ., concur.

Adjudged that the determination is confirmed, and the proceeding is dismissed on the merits, with costs.