[631 NYS2d 910]

In the Matter of BARBARA J. MOLLOY, Petitioner, v MARY JO BANE, as Commissioner of Social Services of the State of New York, et al., Respondents.

Second Department, October 2, 1995

## APPEARANCES OF COUNSEL

*John N. Fath, P. C.,* Patchogue *(Alfred C. Mahany* and *David M. Johnson* of counsel), for petitioner.

*Gary C. Samuels,* Pomona *(David Parker* of counsel), for Noah Weinberg, respondent.

## OPINION OF THE COURT

MILLER, J.

The instant appeal presents a collision of two irreconcilable rules of law. On the one hand, there is a generally recognized right to renounce any and all testamentary or intestate distributions, even when to do so would frustrate one's creditors. On the other hand, public aid is limited and should be spent only on the truly needy. Here, we hold that the policy considerations underlying the latter rule are of paramount importance. Accordingly, while one may renounce a testamentary or intestate disposition, such a renunciation is not without its consequences for purpose of calculating eligibility for Medicaid. Therefore, we confirm the determination of the respondent New York State Department of Social Services.

The petitioner Barbara Molloy, now age 56, had lived for most of her life in Suffolk County before moving to Florida. There she suffered a massive cerebral hemorrhage which left her partially paralyzed, unable to speak, and confined to a wheelchair. She was placed in a rehabilitation hospital in New York and was subsequently moved to the respondent Bishop Sherman Episcopalian Nursing Home in Rockland County. She began receiving medical assistance under the Medicaid program in 1989.

In 1991, the petitioner's 18-year-old daughter Jennifer Molloy was killed in a car accident. The respondent Rockland County Department of Social Services (hereinafter the local agency) learned of this event, and believing that the event could result in a potential recovery for wrongful death, requested on three occasions that the petitioner, through her other daughter Karen Buchholz as attorney-in-fact, assign to the local agency her share of Jennifer's estate. There is no dispute that Jennifer died intestate and that her estate had no

ascertainable value when the assignment was requested. There was no response to the local agency's first two requests. Before receiving the third request, the petitioner filed a renunciation of her interest in the estate with the Surrogate's Court, Suffolk County.

As a result of the petitioner's renunciation, the local agency concluded that the petitioner had failed to cooperate with eligibility requirements by failing to pursue an available resource and by refusing to execute the tendered assignment, in violation of 18 NYCRR 360-2.3 (c) (1) and 360-3.2. Upon receipt of the local agency's notice of intent to discontinue medical benefits, the petitioner demanded a hearing. A fair hearing was held before an Administrative Law Judge at which it was established that the petitioner had renounced her interest in Jennifer's estate, and that Jennifer's sole statutory distributee was her father, whom the petitioner had divorced. Karen Buchholz asserted at the fair hearing that the petitioner, who suffers from numerous debilitating maladies, renounced her interest in Jennifer's estate "because she's not healthy enough to endure the trauma of litigation. It'll kill her". No evidence was adduced at the hearing as to the value of the wrongful death claim, the potential recovery to the estate, or the share thereof that the petitioner would have realized but for the renunciation.

After the fair hearing, the New York State Department of Social Services (hereinafter DSS) concluded that the petitioner had, by virtue of her renunciation, violated 18 NYCRR 360-2.3 (c) (1), pursuant to which she was obligated to pursue a potential resource. As the decision makes clear, the central issue was one of law, construing DSS regulations as to the effect of the renunciation. The petitioner commenced the instant proceeding pursuant to CPLR article 78, which the Supreme Court transferred to this Court for resolution of a perceived substantial evidence question.

We note that this proceeding was improperly transferred to this Court. The facts are undisputed, and the only issues raised involve the interpretation of the relevant statutes. The Supreme Court should have thus considered the legal questions raised. However, inasmuch as the record is sufficient to determine these legal issues, we need not remit the matter to the Supreme Court (see, e.g., Matter of Tutino v Perales, 153 AD2d 181, 185, n 3; Matter of City School Dist. v New York State Pub. Empl. Relations Bd., 144 AD2d 35, affd 74 NY2d 395).

The petitioner correctly argues that pursuant to EPTL 2-1.11, a beneficiary of a testamentary or intestate disposition may renounce such a disposition. The effect of a renunciation is as if the recipient had predeceased the decedent (EPTL 2-1.11 [d]; see, Matter of Chadbourne, 92 Misc 2d 648). The disposition thus never vests in the beneficiary (see, Matter of Scrivani, 116 Misc 2d 204). The right to renounce has also been held to exist where the disposition to be renounced is an intestate share of a wrongful death recovery (see, Matter of Dominguez, 143 Misc 2d 1010). It is also settled that a renunciation will be honored even when its purpose is to keep the bequest beyond the reach of the creditors of the renouncing party (see, Matter of Schiffman, 105 Misc 2d 1025; Estate of Reimer, NYLJ, Sept. 13, 1991, at 28, col 2). The policy underlying statutes recognizing a right to renounce are "based upon the concept that no one should be forced to accept an inheritance or a gift, whether [it] comes about by will, inter vivos gift, or operation of a statute" (Matter of Dominguez, 143 Misc 2d, supra, at 1013; see also, Albany Hosp. v Albany Guardian Socy., 214 NY 435).

However, to be balanced against this recognized policy that a gift can be refused, is an equally established policy that public aid is not without limits, and one who receives public aid may not with impunity hide assets that might otherwise be used to pay for their care.

Article XVII (§ 1) of the NY Constitution decrees that the care and support of the needy are public concerns which shall be provided for by the State by such means as the Legislature shall determine. Pursuant thereto, the State must discharge an affirmative duty to aid the needy (see, Tucker v Toia, 43 NY2d 1). Who is, and who is not, needy, is determined by reference to the rules found in, among other places, Social Services Law § 366, which governs eligibility for medical assistance. Underlying all eligibility determinations is a basic premise that aid is to be furnished only to the truly needy and the Legislature enjoys great discretion to exclude from aid programs those individuals who have purposely created their own need (see, Matter of Kircher v Perales, 112 AD2d 431, 433; Matter of Flynn v Bates, 67 AD2d 975).

Viewed from this perspective, the determination under review is clearly not arbitrary and capricious (see, Matter of Tutino v Perales, 153 AD2d 181, supra) and there is certainly a rational basis for the termination of the petitioner's Medicaid benefits on the ground that she theoretically perpetuated

her own neediness by eschewing a potentially viable resource. The petitioner may have a right to renounce an intestate disposition, but if by so doing she creates or perpetuates her status as a needy person, her renunciation is not without its consequences.

Indeed, while the petitioner argues that EPTL 2-1.11 confers upon beneficiaries an *absolute* right to renounce a disposition, the petitioner's characterization of this right as absolute is far too broad. Ordinarily, the owner of an asset has an absolute right to dispose of that asset, be it realty or personalty, as the owner sees fit. However, for purposes of determining need and eligibility for medical assistance, Social Services Law § 366 places conditions on these rights which cannot be accurately characterized as absolute. For example, subdivision (5) of Social Services Law § 366 provides that any transfer of a nonexempt resource within 24 months prior to an application for medical assistance shall be presumed to have been made for the purpose of qualifying for such assistance. Thus, one cannot convey one's home to a child for no value within 24 months prior to applying for medical aid and not have the value of the home included among the assets to be valued for eligibility determinations *(see, e.g., Matter of Farrell v Perales,* 194 AD2d 670; *Matter of Jirak v Perales,* 125 AD2d 569). In the instant case, the petitioner's renunciation of a potentially available asset was the functional equivalent of a transfer of an asset since by refusing to accept it herself, she effectively funnelled it to other familial distributees. This potential windfall should no more remain "all in the family" than should the home conveyed for purposes of meeting eligibility standards.

The Appellate Division, Fourth Department, reached a similar conclusion in a case presenting analogous facts. In *Matter of Keuning v Perales* (190 AD2d 1033), a recipient of medical assistance benefits attempted to renounce her intestate share of a wrongful death recovery, of an established value of approximately $4,000, because as she was aware, it would affect her eligibility for further benefits. The Court upheld a determination terminating the recipient's benefits because the renunciation was held to constitute an improper transfer of available assets which perpetuated her neediness. As the Court observed, a recipient of public assistance is obligated to utilize all available resources to eliminate or reduce the need for public assistance *(see also, Matter of Tutino v Perales,* 153 AD2d 181, *supra; Matter of Flynn v Bates,* 67 AD2d 975,

*supra; Matter of Street,* 162 Misc 2d 199; *Matter of Scrivani,* 116 Misc 2d 204, *supra).*

We recognize that there are lower court decisions which implicitly support a contrary result. For example, in *Matter of Dominguez* (143 Misc 2d 1010, *supra),* Surrogate Bloom refused an application by DSS to set aside a renunciation on behalf of a deceased Medicaid recipient, finding that the renunciation was proper to block DSS from recoupment of Medicaid funds paid out for the decedent's care. The thrust of that decision, however, acknowledged the theretofore unrecognized right to renounce a wrongful death recovery. It gave no consideration to the issue at bar, i.e., the interplay between the policies permitting renunciations and the policies prohibiting fraudulent transfers of assets. In *Matter of Schiffman* (105 Misc 2d 1025, *supra),* the court likewise refused to set aside a renunciation of an intestate disposition which frustrated an attempt by DSS to recoup benefits because similar to *Matter of Dominguez (supra)* the decision focused only on the right to renounce without consideration of the countervailing policy arguments. In *Estate of Arens* (NYLJ, Nov. 6, 1992, at 26, col 2), Surrogate Bloom did expressly countenance a renunciation as not running afoul of the policies limiting public aid for the truly needy. *Estate of Arens,* however, was decided by the Surrogate's Court, Kings County, prior to the contrary holding by the Appellate Division, Fourth Department, in *Matter of Keuning v Perales* (190 AD2d 1033, *supra).* In any event, to the extent that the Surrogate's holding in *Estate of Arens (supra)* is inconsistent with the present case, it is hereby overruled. We conclude that a renunciation by a recipient of Medicaid must be considered for purposes of determining eligibility *(see, Matter of Keuning v Perales, supra; Matter of Scrivani,* 116 Misc 2d 204, *supra).*

In the instant case, the petitioner's benefits were terminated because she failed to pursue an available resource in violation of 18 NYCRR 360-2.3 (c) (1). To the extent that the estate of Jennifer Molloy represented an available source of funds, the petitioner did violate DSS regulations, and EPTL 2-1.11 does not give her carte blanche to renounce potential available resources without impacting upon her eligibility. Furthermore, contrary to the petitioner's contentions, there is no indication in the record that she would in fact be compelled to participate in any wrongful death action to the detriment of her own health. Indeed, if in fact the petitioner could not participate in litigation without jeopardizing her health, any

decision terminating her benefits for alleged noncooperation would likely be considered to be arbitrary and capricious (see, *Matter of Community Hosp. v D'Elia,* 79 AD2d 1025). As a matter of fact, however, it does not appear that the petitioner would be called upon to be a witness or otherwise be forced to participate in any action by Jennifer's estate and thus, the petitioner's cries of incapacity ring particularly hollow. Moreover, if the estate really was valueless as she contended, the petitioner would have lost nothing by executing the requested assignment.

We are not persuaded by the petitioner's contention that because at the time of the renunciation there was no fixed value to the potential resource the petitioner renounced, the determination under review is arbitrary. To conclude that the lack of a fixed value precludes DSS from seeking an assignment ignores the fact that the regulations require the pursuit of *potential* resources.

It should be noted that 18 NYCRR 360-4.4 (c) (2) (iii) limits a recipient's period of ineligibility to 30 months from the date of the transfer of an asset or for a period of time proportionate to the value of the asset transferred. Therefore the petitioner may apply to reinstate her eligibility if she is willing to divulge the amount of money recovered by Jennifer's estate and the proportion thereof that would have been payable to the petitioner but for the renunciation. In that event, the petitioner's eligibility will be recomputed.

We have reviewed the petitioner's remaining contentions and find them to be without merit.

Accordingly, the determination is confirmed, without costs or disbursements, and the proceeding is dismissed on the merits.

SULLIVAN, J. P., THOMPSON and JOY, JJ., concur.

Adjudged that the determination is confirmed, without costs or disbursements, and the proceeding is dismissed on the merits.