697 A.2d 113

**Richard E. TROY, Personal Representative of the Estate of Paul H. Lettich,**

v.

**Mildred R. HART, Personal Representative of the Estate of Alta Mae Lettich.**

No. 1290, Sept. Term, 1996.

Court of Special Appeals of Maryland.

June 3, 1997.

Reconsideration Denied June 25, 1997.

Christina A. Collins (Collins & Collins, P.A., on the brief), Towson, for Appellant.

Thomas M. DiGirolamo (Howard W. Gilbert, Jr. and Gilbert, Marks & DiGirolamo, Chartered, on the brief), Hagerstown, for Appellee.

J. Joseph Curran, Jr., Atty. Gen. of Maryland, Carolyn J. McElroy and Catherine L. Schuster, Attys. Gen., Baltimore, for amicus curiae, State.

Argued before EYLER and THIEME, JJ., and
THEODORE G. BLOOM, Judge (retired), Specially Assigned.

THIEME, Judge.

This appeal is from an order of the Circuit Court for Washington County (Sharer, J.) denying an attempt by appellant, Richard E. Troy, Personal Representative of the Estate of Paul H. Lettich, to rescind the decedent's renunciation and disclaimer of his inheritance. Troy presents for our review the following issues, which we have reorganized for clarity:

1. Did the procurement of Lettich's disclaimer by Hart [the decedent's sister] constitute a breach of her confidential relationship with Lettich?

2. Was the disclaimer procured by undue influence?

3. Was Lettich's rescission barred by Estates and Trusts § 9–205?

4. Was Lettich's disclaimer contrary to Medicaid law and against public policy?

The State of Maryland, *amicus curiae*,[1] presents the following issue:

Did the circuit court err when it held that a Medicaid recipient is entitled to disclaim an inheritance so that he can remain eligible for Medicaid, where if the recipient had collected his inheritance, he would have been able to pay for his own medical care, without public welfare assistance?

The issue presented by the *amicus curiae* exceeds and distorts the decision of the circuit court. The question before us is whether the court erred in holding that the Medicaid recipient could disclaim his inheritance. Our answer to that question, as well as to all of the issues presented by appellant, is "No," and we shall therefore affirm the judgment of the circuit court.

---

1. On 4 September 1996, we granted the State's motion for leave to participate as *amicus curiae*.

## Facts

Paul Lettich (Lettich) became a resident of the Cardinal Sheehan Center for the Aging, Stella Maris Hospice (Stella Maris), in April 1992. Prior to his admission, Lettich appointed Richard Troy (Troy) as his attorney in fact and granted him power of attorney, on 4 February 1992.[2]

In conjunction with his duties, Troy applied for medical assistance on behalf of Lettich when Lettich's resources were exhausted. Lettich was ultimately deemed qualified to receive those benefits on or about 1 January 1995. All medical expenses were paid by Medicare and Medicaid from that day forward.

On 25 February 1995, Lettich's sister, Alta Mae Lettich (Alta Mae) died intestate, leaving an estate in excess of $300,000. Alta Mae was survived by Lettich and two sisters, Mildred Hart (Hart) and Gladys McGlaughlin (McGlaughlin). To say that personal contact between Lettich and his sisters was sparse is hyperbole. Troy, however, kept family members abreast of Lettich's status, including, specifically, financial and administrative matters such as Troy's legal relationship with Lettich.

On 22 March 1995, Hart was appointed personal representative of Alta Mae's estate with the consent of the surviving siblings. On 28 April 1995, Hart, undeterred by Troy's capacity as Lettich's attorney in fact, visited Lettich and assisted him in executing a disclaimer to his share of his sister's estate. During that visit, Hart overlooked advising Lettich of the ramifications of the disclaimer on his Medicaid status. As a result of dividing Lettich's $100,000 share between themselves,[3] Hart and McGlaughlin each became $50,000 richer.

---

**2.** The record is clear, however, that Troy's responsibilities did not include those of guardian.

**3.** Our collective judicial conscience is quite relieved by the fact that our review of Lettich's will indicates that Troy's motivation was philanthropic, not pecuniary. He was not the subject of a bequest.

The following month, Troy was notified by Stella Maris's business office that Lettich had renounced his inheritance. Troy promptly retained counsel, on Lettich's behalf, who filed in the orphans' court on 24 June 1995 a petition seeking to rescind the disclaimer and remove Hart as personal representative of Alta Mae's estate.

Hart retained Robert Veil, Jr., Esq., to defend her. On 24 August 1995, one day prior to the deadline for filing Hart's answer to the petition, Veil visited Lettich and requested him to execute a motion to strike the orphans' court petition so as to remove the possible irritation of an attorney, and also to execute a revocation of Troy's power of attorney. A vigilant Stella Maris social worker intervened and suggested that Troy be consulted. When notified, Troy contacted his current counsel, who immediately called Stella Maris and advised Veil that she represented Lettich and that Veil was forbidden to speak to Lettich. For reasons not clear from the record, Veil acquiesced.

Lettich died on 20 September 1995.

Subsequent to the orphans' court's denial of the petition, Troy sought a *de novo* appeal in the Circuit Court for Washington County. The court granted Hart's motion for judgment with respect to the attempt to have her removed as personal representative of the estate and dismissed the portion of the petition seeking to rescind Lettich's disclaimer. Troy timely filed a notice of appeal.

## Discussion

### Procurement of the Disclaimer

Troy asserts that the events surrounding the procurement of the disclaimer from Lettich constituted undue influence

---

Lettich's estate was to be distributed among his surviving sisters and his lifelong friend and companion, Hernel Gruber. This Court would not presume to speculate from the circumstances surrounding the procurement of the disclaimer, including Hart's oversight in informing her brother of the amount which he stood to inherit from their late sister's estate, that, as personal representative of the estate, Hart had a fiduciary duty to her brother.

and, accordingly, that the disclaimer should be set aside. Compounding the egregiousness of this alleged malfeasance on the part of Hart, Troy insists, is the fact that Hart owed Lettich a fiduciary duty in light of their respective statuses of personal representative and devisee. *See* Maryland Code (1974, 1991 Repl.Vol.), S 7–101 of the Estates and Trusts Article (Est. & Tr.). Moreover, Troy maintains that, because of Lettich's physical and mental condition, a confidential relationship also existed, and was breached during the procurement of the disclaimer.

A confidential relationship may be established by subjective factors, such as the advanced age, physical debility, mental feebleness, and overall dependence of the individual of whom the dominant party has supposedly taken advantage. *Treffinger v. Sterling,* 269 Md. 356, 361, 305 A.2d 829 (1973); *Tribull v. Tribull,* 208 Md. 490, 507, 119 A.2d 399 (1956); *Gaggers v. Gibson,* 180 Md. 609, 612–613, 26 A.2d 395 (1942). Once established,

> "[t]he existence of the confidential relation creates a presumption of influence which imposes upon the one receiving the benefit the burden of proving an absence of undue influence by showing that the party acted upon competent and independent advice of another, or such facts as will satisfy the court that the dealing * * * was had in the most perfect good faith on his part and was equitable and just between the parties."

*Gaggers* at 613, 26 A.2d 395 (citations omitted).

In the case *sub judice,* the court found Lettich to be aged, physically infirm, and, apparently, at least partially dependent on another, namely Troy, to handle his day-to-day affairs. What the court did not specifically intimate, however, was any suggestion of mental incompetence on the part of Lettich.

The circuit court further addressed appellant's claim of undue influence and found that appellant clearly did not establish that the free agency of Lettich was destroyed. Our independent review of the record supports the trial court's

finding inasmuch as it was wholly based on factual observations presented by the parties. Md.Rule 8–131(c) provides that when an action is tried without a jury "[we] will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." If there is any evidence legally sufficient to support the court's findings, they are not clearly erroneous, for the weight of the evidence is a question for the court, sitting as the finder of fact. *Weisman v. Connors,* 76 Md.App. 488, 500, 547 A.2d 636 (1988), *cert. denied,* 314 Md. 497, 551 A.2d 868 (1989).

### Estates and Trusts § 9–205

Both Troy and the State assert that Lettich's disclaimer is barred by Est. & Tr. § 9–205, which provides, in pertinent part:

> (a) The right to disclaim property or an interest in it is barred by (1) an assignment, conveyance, voluntary encumbrance, or transfer of the property or interest, or a contract for any of those....

It is unquestionably clear that Lettich did not, by applying for Medicaid benefits, assign or transfer to the State his rights to the inheritance. Neither did his application constitute an encumbrance with regard to the inheritance. Because the latter conclusion is not as readily apparent as the former, we think it necessary to discuss how we arrive at it.

While "[t]here is no precise definition of an encumbrance," *Magraw v. Dillow,* 341 Md. 492, 503, 671 A.2d 485 (1996), the term logically includes a withholding of a right or interest in property to a third party. In applying for Medicaid benefits, Lettich only placed himself under a duty to disclose any change in his financial status within 10 days of the change. COMAR 10.09.24.12(B)(1). He did not affirmatively encumber or withhold any prospective interest or right in favor of the State. If, *arguendo,* this were the case, such an interest would be tantamount to a confessed judgment. In neither theory nor purpose is an application for Medicaid benefits

synonymous with executing a confessed judgment. Because an application for Medicaid benefits does not constitute an assignment, conveyance, voluntary encumbrance, transfer of property or an interest, or a contract for any of these actions, Estates and Trusts § 9–205 is therefore inapposite to the instant case, and we accordingly hold the disclaimer was not barred by this statute.

Any benefits that may have been incorrectly paid to Lettich would have been solely attributable to his failure to inform the State of his wealth.

### Medicaid Considerations

Under English Poor Law,

"The father and grandfather, mother and grandmother, and children of every poor, old, blind, lame and impotent person, or other person not able to work, being of sufficient ability, shall at their now charges relieve and maintain every other person, in that manner, and according to that rate, as by the justices of that county where such sufficient persons dwell, in their sessions shall be assessed" [4]

Today, however, by 42 U.S.C. § 1396a(a)(17)(D), Congress has abrogated the legal duty to support one's parents, and even a cursory perusal of this, or other sections of 42 U.S.C. § 1396 (the subsection of the Social Security Act with which we will be attempting to deal), will demonstrate Congress's indifference to the simplicity and clarity of the Elizabethan language.[5]

---

4. Poor Relief Act, 1601 (43 Eliz. c. 2).

5. "The Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction, as Judge Friendly has observed, makes the Act 'almost unintelligible to the uninitiated.'" *Schweiker, Secretary of Health and Human Services, et al. v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (quoting *Friedman v. Berger,* 547 F.2d 724, 727 n. 7 (2d Cir.1976), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977)). Prior to appellate review of *Friedman* by the Second Circuit Court of Appeals, the District Court in the same case described the Medicaid statute as "an aggravat-

Medicaid is a "means-tested" program, that is to say, eligibility for Medicaid depends on meeting various income and resource tests. Maryland's Department of Health and Mental Hygiene (DHMH) administers the local aspect of the program and requires, as a condition of eligibility for benefits, that applicants disclose all available assets to the Department of Social Services (DSS). COMAR 10.09.24.04. An applicant must satisfy asset limits in order to receive coverage.

Once an individual is receiving benefits, it is not inconceivable that his eligibility status might change due to a multitude of financial circumstances. COMAR dictates, as a post-eligibility requirement, that recipients or their representatives shall notify the department "within 10 working days of changes affecting ... eligibility...." COMAR 10.09.24.12(B)(1). If one fails to disclose such a change, the shadow of fraud surfaces.

██ Upon his acquisition of an equitable interest in his sister's estate, Lettich—personally, or through his attorney, Hart—had the legal obligation to notify DSS of the inheritance in light of its potential ramifications on Lettich's eligibility. While one who obtains money through a testamentary gift is said to have acquired legal title to the money at the time of probate, *Schaefer v. Spear,* 148 Md. 620, 627, 129 A. 898 (1925), equitable title to the money transfers at the death of the testator. *See Rowe v. Cullen* 177 Md. 357, 368, 9 A.2d 585 (1939) (rights of distributees vest at the death of the testator). The Court of Appeals has found this to be the case with respect to real property, inasmuch as title to realty generally relates back to the death of the testator. *Matthews v. Fuller,* 209 Md. 42, 120 A.2d 356 (1956). Moreover, in *Bouse v. Hull,* 168 Md. 1, 176 A. 645 (1935), the Court relied upon *Bradford v. Calhoun,* 120 Tenn. 53, 109 S.W. 502, 504 (1908), in stating that a renunciation [of an equitable interest] shall relate back to the time of the transfer and thereby will

ed assault on the English language, resistant to attempts to understand it." *Id.* at 43 n. 14, 101 S.Ct. at 2640 n. 14.

nullify any creditor's levy that may have been made during the viability of, and against, the renunicator's equitable interest, which levy could have been enforced at the time legal title vested.

Lettich's failure to notify DSS constituted a violation of applicable Medicaid law and deprived both state and federal governments of an opportunity to reassess his eligibility.

### General Policy Considerations

What this Court is more broadly faced with is the propriety of the disclaimer in light of societal interest and overall policy considerations. What is ludicrous, if not repugnant, to public policy is that one who is able to regain the ability to be financially self-sufficient, albeit for a temporary or even brief period of time, may voluntarily relinquish his windfall.[6]

While we are mindful that social agencies are "skewered through and through with office pens, and bound hand and foot with red tape," [7] this acknowledgment does not vitiate legal obligation to report a recipient's change in financial status. Lettich had a legal obligation to "pay his own way" (by means of the inheritance) until such time as his resources were exhausted. Had the disclaimed funds actually been acquired and exhausted, Lettich most certainly would have been eligible to resume his receipt of Medicaid benefits.

In *Molloy v. Bane,* 214 A.D.2d 171, 631 N.Y.S.2d 910 (1995), the Supreme Court of New York, Appellate Division, confronted the same issue now before this Court. Molloy, a resident of a nursing home, was a recipient of medical assistance. Upon the death of her daughter, Molloy, pursuant to intestacy

---

**6.** Analogously, in divorce cases this Court has refused to award support to a spouse who has voluntarily impoverished himself. *See John O. v. Jane O.,* 90 Md.App. 406, 421, 601 A.2d 149. ("[I]n the context of a divorce proceeding, the term "voluntarily impoverished" means: freely, or by an act of choice, to reduce oneself to poverty or *deprive oneself of resources* with the intention of avoiding ... obligations." (Emphasis supplied.))

**7.** Charles Dickens, *David Copperfield.*

law, was entitled to her statutory share of the estate. Prior to disposition of the estate, Molloy renounced her interest in it. Acknowledging that the right to renounce a intestate is irreconcilable with the principle that public aid is of a limited nature and should only be afforded to those who demonstrate legitimate need, *id.*, 631 N.Y.S.2d at 911, the court found that "[Molloy]'s renunciation of a potentially available asset was the functional equivalent of a transfer of an asset since by refusing to accept it herself, she effectively funneled it to other familial distributees." *Id.* at 913.

Applying this analysis to the case *sub judice*, we adopt the reasoning of the New York court. The result of such a transfer prior to application for benefits is that the transferee enjoys a "windfall" for which the applicant/transferor is penalized against the inception of his eligibility. So too should this penalty result in a circumstance in which a Medicaid recipient disclaims or otherwise transfers an inheritance that if accepted would result in a loss of eligibility.

█ If a recipient renounces an inheritance that would cause him to be financially disqualified from receiving benefits, the renunciation should incur the same penalty of disqualification that acceptance would have brought about, and should render the recipient liable for any payments incorrectly paid by the State in consequence. To permit disclaimed property to pass to transferees free and clear of any obligation would be a violation of public policy. That is precisely the situation before this Court. Lettich's failure to disclose resulted in the improper payment of Medicaid benefits by the State on behalf of Lettich after the expiration of the grace period (during which disclosure was compelled), inasmuch as the inheritance would have caused DHMH/DSS to reassess Lettich's eligibility in light of his changed financial circumstance. COMAR indicates that an applicant/recipient's breach of this particular duty may result in the initiation of criminal or civil action by the State, including the seeking of reimbursement from the recipient. COMAR 10.09.24.12(B)(6). Because initial eligibility must be established by a lack of financial resources, an

action for reimbursement against the recipient or his estate would undoubtedly be futile and similar to attempting to draw blood from a stick. The lack of a mechanism to effectuate the State's interest in reimbursement essentially emasculates the duty to disclose a change in financial status, as there exists no meaningful recourse against individuals who fail to comply.

The effect of Lettich's execution of the disclaimer was to transfer his intestate interest in Alta Mae's estate to his surviving sisters. Accepting the inheritance would have made him financially ineligible for Medicaid. The result of our decision today is that Lettich's disclaimer is valid under Est. & Tr. § 9–205. Thus, Mildred Hart and Gladys McGlaughlin will divide the estate of Alta Mae Lettich according to the laws of intestacy. We suggest that this interest should be taken subject to any claim(s) that the State may have against Lettich's estate for any Medicaid benefits improperly paid as a result of Lettich's failure to inform DSS of his acquisition of property while receiving Medicaid benefits.[8]

This Court recently stated that "[a] constructive [trust] is a remedy employed by the courts to convert the holder of legal title to property into a trustee 'for one who in good conscience should reap the benefits of the possession of said property.'" *Dulany v. Taylor*, 105 Md.App. 619, 634, 660 A.2d 1046 (1995) (*Hamilton v. Caplan*, 69 Md.App. 566, 583–584, 518 A.2d 1087 (1987), quoting *Wimmer v. Wimmer*, 287 Md. 663, 668, 414 A.2d 1254 (1980)). "The remedy is applied by operation of law where ... the circumstances render it inequitable for the party holding the title to retain it." *Wimmer*, 287 Md. at 668, 414 A.2d 1254 (citations omitted). "The purpose of imposing a constructive trust is to prevent the unjust enrichment of the title holder." *Dulany*, 105 Md.App. at 634, 660 A.2d 1046 (citing *Wimmer*, 287 Md. at 668, 414 A.2d 1254).

---

**8.** At oral argument, Hart's counsel stated that he would be acquiescent to reimbursing the State for any Medicaid benefits erroneously paid for the benefit of her late brother.

In *Mass Transit Administration v. Granite Constr. Co.*, 57 Md.App. 766, 773–774, 471 A.2d 1121 (1984), we explained:

> The doctrine of unjust enrichment applies where " 'the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money.' " Dobbs, *Handbook on the Law of Remedies*, § 4.2 (1973), quoting Lord Mansfield in *Moses v. MacFerlan*, 2 Burr. 1005, 97 Eng.Rep. 676 (K.B.1760). This policy against unjust enrichment is the theory behind the restitutionary remedies. Those remedies serve to "deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses." Dobbs, *supra*, § 4.1.

We think it clear that the State has an equitable and practical interest in both the changed circumstances of a recipient as well as the instrumentality that gives rise to such a change. The "10–day disclosure period" affords the State notice and opportunity to intervene and assert any potential claim(s) against the property or an equitable interest therein. Should it fail to assert any claim within this time, its interest is waived. Such a waiver, however, is contingent upon the recipient giving due notice in accordance with his duty to report his changed circumstances. The failure to do so clearly deprives the State of its ability to exercise its rights and may well result in the unjust enrichment of those who surreptitiously dine upon the fruits of inheritance while cloaked by the veil of non-disclosure.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**