OPINION OF THE COURT
Daniel F. Luciano, J.
The petitioner, Andrea D. Cooper, is the sister and guardian for the personal needs and property management of Kenneth Daniels pursuant to a commission issued upon an order of this court dated February 4,1994.
In the current application the petitioner, Andrea D. Cooper, has inconsistently stated what specific relief is sought. In her order to show cause it is stated that she seeks an order empowering her "to effect a certain transfer of property presently held in the name of Kenneth Daniels for the benefit of his children, Brian Daniels and Jean Daniels, in particular, to be transferred pursuant to Article 17 of the Real Property Actions and Proceedings Law, upon the ground that those actions are necessary to provide for his dependent children, as he would do if he were able to do so himself’. In paragraph (8) of the petition it is indicated that the guardian seeks the power to transfer the subject property only to Jean Daniels, the daughter of Kenneth Daniels.
By a separate order to show cause the guardian, Andrea D. Cooper, has sought authorization "to make transfers of certain property and also to effect a renunciation pursuant to paragraph (c) of section 2-111 of the Estates, Powers and Trust Law on behalf of Kenneth Daniels, upon the ground that this *842 action is necessary to provide for his dependent children, as he would do if he were able to do so himself’. This application will be addressed in a separate decision.
The guardian’s testimony at the hearing reflects that subsequent to the prior proceedings resulting in her appointment as guardian, the condition of the incapacitated person, Kenneth Daniels, has deteriorated. As she explained, at the time of the prior proceeding he "was able to feed himself partly, they were doing some physical therapy and occupational therapy.” Since that time he has undergone neurosurgery, which was followed by multiple seizures. As a consequence he is no longer able to receive the previously provided therapies, and must now be fed by a tube. He is, therefore, profoundly disabled.
Kenneth Daniels’ wife predeceased him, and he has two children, Brian, age 23, and Jean, age 20. Brian resides in his own apartment, the rent for which has been paid from Kenneth Daniels’ funds. Jean Daniels is a student.
The petition indicates that the rate of payment to maintain Kenneth Daniels as a patient at the Long Island State Veterans Facility in Stony Brook, New York, is $175 per day. In addition he has "received doctor bills in the amount of approximately $10,000.” Further expenses are anticipated.
It is asserted that the subject real property will be of no further benefit to Kenneth Daniels, and that the proposed transfer constitutes proper Medicaid planning.
As explained by Honorable Sebastian Leone in Matter of Klapper (NYLJ, Aug. 9, 1994, at 26, cols 1, 2):
"Medicaid planning involves the transferring of assets to permit an individual to become Medicaid-eligible for the cost of nursing home care while enabling him or her to preserve some of his or her assets for the next generation. Under the 1993 Omnibus Budget Reconciliation Act (OBRA '93) and New York’s conforming legislation (Chapter 170 of the Laws of 1994), except in the case of payments from a trust (which has a 60-month 'look-back’ period), there is a 36-month 'look-back’ period from the date of Medicaid application. This means that Medicaid 'looks back’ to determine the total uncompensated value of all assets transferred by the individual or the individual’s spouse on or after the 'look-back’ date. This amount is divided by the average monthly cost to a private patient in a nursing home. (The 'official rate’ for this cost in New York City for 1993 was $5,584 per month.) The result equals the *843 penalty period, which is the amount of time during which Medicaid will not pay for nursing home care as of the month the transfer occurred (see, Strauss, Law and the Aging: New York’s New Medicaid Statute, NYLJ, June 29, 1994, at 3, col 1; Strauss, Law and the Aging: Medicaid Revisions in 1993 Budget Act, NYLJ, Sept. 30, 1993, at 3, col 1).
"There is no question that the use of such Medicaid planning by competent persons is legally permissible and that proper planning benefits their estates.”
While one may choose to debate whether the authority of one to engage in Medicaid planning is sound public social or fiscal policy, less open to debate is the conclusion that the codified rules and policies to which Justice Leone referred in Matter of Klapper (supra) authorize, if not encourage, such Medicaid planning.
The proposed transfer of real property is consistent with a plan to qualify Kenneth Daniels for receipt of Medicaid, while preserving assets for his family to the extent permitted by the applicable statute.
Section 366 of the Social Services Law concerns eligibility for medical assistance. It specifies, inter alla, resources which are to be included and exempted from inclusion in determining a person’s eligibility for medical assistance. Some property in certain circumstances may be transferred without being subject to inclusion in the calculation of a person’s "resources” in determining such eligibility.
Specifically applicable to the current matter is Social Services Law § 366 (5) (d) (3) (i) (B) which provides:
"(d) For transfers made on or after August tenth, nineteen hundred ninety-three * * *
"(3) In determining the medical assistance eligibility of an institutionalized individual, any transfer of an asset by the individual or the individual’s spouse for less than fair market value made within or after the look-back period shall render the individual ineligible for nursing facility services for the period of time specified in subparagraph four of this paragraph. Notwithstanding the provisions of this subparagraph, an individual shall not be ineligible for services solely by reason of any such transfer to the extent that:
"(i) In the case of an institutionalized individual, the asset transferred was a home and title to the home as transferred to * * * (B) a child of the individual who is under the age of twenty-one years or blind or disabled.”
*844 Accordingly, the proposed transfer to Jean Daniels (but not Brian Daniels) seems appropriate to the extent that the current application raises questions relative to Medicaid policy and eligibility.
The next matter to examine is whether the proposed transfer is permissible pursuant to article 81 of the Mental Hygiene Law. This issue was addressed by Honorable Sebastian Leone in Matter of Klapper (supra, at 26, cols 2-3):
"The question presented herein is whether incapacitated persons should be accorded this same right to engage in Medicaid planning or, more specifically, whether a court, pursuant to Mental Hygiene Law § 81.21, may authorize a guardian to transfer a part of an incapacitated person’s assets to or for the benefit of another individual for the purpose of Medicaid planning on the ground that the incapacitated person would have made such transfer if he or she had the capacity to act.
"Subdivision (a) of section 81.21 of the Mental Hygiene Law expressly permits a court to authorize a guardian 'to transfer a part of the incapacitated person’s assets to or for the benefit of another person on the ground that the incapacitated person would have made the transfer if he or she had the capacity to act.’ 'This section gives statutory recognition to the common law doctrine of substituted judgment’ (Law Rev Commn Comments to Mental Hygiene Law §81.21; see also, Matter of Florence, 140 Misc 2d 393, 395). The powers enumerated in section 81.21 include the power to 'make gifts’ (Mental Hygiene Law §81.21 [o][a][l]).
"A threshold issue arises, however, as to whether a court, pursuant to Mental Hygiene Law §81.21, may authorize a guardian to transfer a part of an incapacitated person’s assets in order for the incapacitated person to become eligible for Medicaid or must the guardian be required to 'spend down’ the incapacitated person’s assets to meet Medicaid eligibility requirements? While no case has yet addressed this novel issue, the court notes that among a guardian’s enumerated powers in Mental Hygiene Law §81.21(a) are the powers to 'convey or release contingent and expectant interests in property, including marital property rights and any right of survivorship incidental to joint tenancy or tenancy by the entirety’ (Mental Hygiene Law §81.21[a][3]), and to 'renounce or disclaim any interest by testate or intestate succession or by inter vivas transfer’ (Mental Hygiene Law §81.21[a][10j). These provisions are instructive since they enunciate the concept *845 that a guardian is not required to accept and 'spend down’ certain assets, but may convey, release, renounce, or disclaim them to render the incapacitated person Medicaid eligible (see, Matter of Driscoll, NYLJ, Oct. 22, 1993, at 30, col 4 [Sup Ct, Nassau County]; Matter of Scheiber [Zachodnick] [sic] NYLJ, Oct. 18, 1993, at 38, col 5 [Sup Ct, Suffolk County]).
"This court does not find that a transfer for the purpose of Medicaid planning would violate public policy. Rather, it appears to be the intention of article 81 of the Mental Hygiene Law to permit such a transfer. The fundamental policy underlying article 81 is to assist the incapacitated person to compensate for limitations and to provide the least restrictive alternative for him or her (see, Law Rev Commn Comments to Mental Hygiene Law §81.03). In order to effectuate this policy, an incapacitated person should be permitted to have the same options available to him or her with respect to transfers of his or her property that are available to competent individuals.
"To deny a guardian the authority (where the requirements of Mental Hygiene Law §81.21 are otherwise met) to make such transfer of the incapacitated person’s assets would result in denying that person the opportunity which is available to all competent persons of this State who require long-term nursing home care and who have assets they desire to gift to their families, simply because he or she is incapacitated and is unable from a cognitive standpoint to make such transfer himself or herself. Such a result would be in direct contravention of the expressed intention of article 81.
"Therefore, the court finds that Medicaid planning is a proper objective of a proposed disposition of an incapacitated person’s property.”
As noted by Justice Leone in Matter of Klapper (supra), section 81.21 (a) of the Mental Hygiene Law embodies the common-law doctrine of "substituted judgment” (accord, Matter of Beller [Maltzman] NYLJ, Aug. 31, 1994, at 23, col 4; Matter of Goldberg [Ginsberg] NYLJ, Aug. 31, 1994, at 24, col 1; Matter of Scheiber [Zahodnick] NYLJ, Oct. 18, 1993, at 38, col 5, supra), and allows the authorization of a guardian to make gifts of an incapacitated person’s property in appropriate cases.
Section 81.21 (d) of the Mental Hygiene Law directs:
"In determining whether to approve the application, the court shall consider:
*846 "1. whether the incapacitated person has sufficient capacity to make the proposed disposition himself or herself, and, if so, whether he or she has consented to the proposed disposition;
"2. whether the disability of the incapacitated person is likely to be of sufficiently short duration such that he or she should make the determination with respect to the proposed disposition when no longer disabled;
"3. whether the needs of the incapacitated person and his or her dependents or other persons depending upon the incapacitated person for support can be met from the remainder of the assets of the incapacitated person after the transfer is made;
"4. whether the donees or beneficiaries of the proposed disposition are the natural objects of the bounty of the incapacitated person and whether the proposed disposition is consistent with any known testamentary plan or pattern of gifts he or she has made;
"5. whether the proposed disposition will produce estate, gift, income or other tax savings which will significantly benefit the incapacitated person or his or her dependents or the persons for whom the incapacitated person would be concerned; and
"6. such other factors as the court deems relevant.”
Certainly, the present record supports the conclusion that Kenneth Daniels is unable to make the proposed disposition himself, and is not likely to gain the ability to be able to do so. Further, he has no minor dependents and any support he could provide for his 20-year-old daughter will be enhanced by this transfer to her. His 23-year-old son is not a person who Kenneth Daniels has any obligation to support.
Regarding the consistency of the proposed disposition of any known testamentary plan or pattern of gifts, paragraphs (12) and (13) of the petition are relevant:
"12. Kenneth Daniels has a previously executed will * * * The essential terms of said will are as follows: Kenneth Daniels directs that his estate pass to his spouse, Evelyn Daniels, who is now deceased, and if she predeceased Kenneth Daniels, then to his surviving children in equal shares * * *
"13. To the best of the petitioner’s knowledge, to date there have been no significant gifts or patterns of gifts made by Kenneth Daniels.”
Thus, the proposed disposition is inconsistent with the known testamentary plan because it gifts the property to Jean *847 Daniels only, and does not provide for it to be shared by his son, Brian Daniels. However, because of the Medicaid eligibility rules it would not be legally possible to make the gift to Brian Daniels and establish Kenneth Daniels’ Medicaid eligibility. Thus, while the proposed disposition is not wholly consistent with the testamentary plan, the reasons therefor are obvious.
Further, absent a prior pattern of gift giving this proposed disposition cannot be said to be consistent with any established pattern. The inconsistency with the testamentary plan, and the lack of a prior pattern of gifts, however, need not constitute a bar to the approval of the proposed plan.
Considering an application for authority of coguardians to dispose of an incapacitated person’s property in Matter of Scheiber (Zahodnick) (supra, at 39, col 1), this court had the occasion to state:
"It is noteworthy that in the current case the petition did not include allegations relative to a will or prior patterns of gift giving and at the hearing there was a lack of any evidence to establish a prior inclination of Hortense Zahodnick to make gifts of her assets to either of these petitioners, June Jelis Scheiber or Hortense Sedlacek, or to any one else, notwithstanding that by objective standards of rational 'estate planning’ some conveyance of her assets might be judged to have been provident.
"Nevertheless, in the search for what the intent of the incapacitated person, Hortense Zahodnick, would have been in this regard had she not been suffering from her incapacity, the lack of proof of her prior failure to have made gifts or to have established a testamentary plan consistent with the proposed plan of the guardian need not be taken as conclusive proof that the proposed plan must be rejected.
"Mental Hygiene Law section 81.21[e][3] instructs that in order to permit the guardian to proceed with the proposed donative plan, the Court must find that such plan is not inconsistent with a previously existing intention of the now incapacitated person, or, even if such a prior inconsistent intent was previously revealed that the particular person would have been likely to have changed his or her intentions under the conditions existing at the time of the filing of the petition, and thus not be opposed to the guardian’s proposed plan.
"Absent proof of a prior contrary intent, however, Mental *848 Hygiene Law section 81.21[e][3] does not require clear and convincing proof as to what the particular incapacitated person’s intent would have been. [WJhere there is no proof that a contrary intent has been manifested, as is the case here, the standard of proof, although high, is objective. What must be proved in such a case by clear and convincing evidence (Mental Hygiene Law section 81.21[c]) is the likelihood of performance of the acts by 'a competent, reasonable individual in the position of the incapacitated person’ (Mental Hygiene Law section 81.21[e][2]).
"In this case no specific contrary intent has been shown and the powers sought by the guardians are specifically authorized by the statute (Mental Hygiene Law section 81.21[a]). Moreover, to provide tax savings to the incapacitated person 'or his or her dependents or other persons for whom the incapacitated person would have been concerned’ (Mental Hygiene Law section 81.21[d][5]) is a proper objective of a proposed disposition of an incapacitated person’s property.”
In the present case, although the known testamentary plan is somewhat different than the guardian Andrea D. Cooper’s proposed disposition, the reason therefor is obvious, since at the time of drafting his will Kenneth Daniels would not have been considering Medicaid eligibility as a factor. Moreover, while in Matter of Scheiber (Zahodnick) (supra), the purpose of the plan was to save taxes, the fact that the purpose of the plan here is to obtain Medicaid eligibility does not render the reasoning of Matter of Scheiber (Zahodnick) inapplicable to this matter.
Upon the current record it is fair to conclude that Kenneth Daniels has not manifested a prior contrary intent to the proposed disposition of the subject real property. Accordingly, as in Matter of Scheiber (Zahodnick) (supra) whether the proposed transfer should be permitted should be measured against an objective standard.
Based thereon it is the court’s conclusion that a competent, reasonable individual in the position of Kenneth Daniels would be likely to make the proposed transfer of real property since such a person would prefer that his property pass to his child rather than serve as a source of payment for Medicaid and nursing home care bills where a choice is available.
As stated by Honorable Sebastian Leone in Matter of Goldberg (supra, at 24, col 4): "Based upon the facts and evidence presented to this court, it appears that Shirley Ginsberg would *849 not reasonably choose to 'spend down’ almost all of her assets in payment to the nursing home before applying for Medicaid when the law provides a manner for her to preserve a portion of her estate for the benefit of her daughter and the issue of her other daughter.”
A similar conclusion is warranted in this case.
Accordingly, the proposed transfer of real property to Jean Daniels, only, is approved.