OPINION OF THE COURT
Daniel F. Luciano, J.
This is a proceeding for the appointment of a guardian for Marie Baird pursuant to article 81 of the Mental Hygiene Law.
Following the hearing and oral argument on the record on June 7, 1995 and June 22, 1995 the court reserved decision. The court’s decision is set forth herein.
With respect to Marie Baird’s functional limitations and lack of understanding and appreciation of the nature and consequences of her functional limitations, the record leaves no doubt that the clear and convincing evidence establishes Marie Baird is an incapacitated person in need of the appointment of a guardian for her property management and personal needs.
Among the maladies from which Marie Baird suffers are Alzheimer’s disease, dementia with agitation, breast cancer, Paget’s disease, blindness resulting from glaucoma and a seizure disorder. The Court Evaluator, Karen Caggiano, Esq., testified, in part: "Her last activity of daily living review was in April of 1995 and it indicated she had short and long-term memory problems. She has severe impairment of her cognitive ability. She rarely understands anyone or makes herself *528 understood and that [sic] she seems very distressed and she has socially inappropriate behavior.” (Transcript, June 7, 1995, at 12; see also, physician’s affidavit of Jacques M. Schmid, M.D., Apr. 3, 1995.)
Although the record is unequivocal in supporting the conclusion that Marie Baird is totally incapable of providing for any of her personal needs or the management of her property, and that she requires a guardian to serve for an indefinite duration to avoid harm with respect to her personal needs and property management, there is a disputed issue in this matter.
Among the powers being sought for the property management guardian is the authority to "renounce part of her interest in the Estate of Beatrice A. Chemidlin, who died on October 14, 1994.”
It appears that Beatrice A. Chemidlin was a longtime friend of the alleged incapacitated person, Marie Baird. In her last will and testament, Beatrice A. Chemidlin provided for the disposition of her property if she was predeceased by her husband, John P. Chemidlin, in part as follows: "15% to my friend, marie c. baird, but should she predecease me, to her children, THOMAS BAIRD, DOUGLAS BAIRD and GREGORY BAIRD, equally, share and share alike.”
John P. Chemidlin did predecease Beatrice A. Chemidlin and the court is informed that 15% of the estate of Beatrice A. Chemidlin amounts to $88,800.
The petitioner proposes that the guardian be authorized to renounce a portion of the inheritance. Such partial renunciation is intended to provide sufficient funds to pay for Marie Baird’s nursing home costs during a Medicaid "penalty” period, while allowing the remaining funds to pass to her sons, Thomas Baird, Douglas Baird and Gregory Baird, and not be expended for Marie Baird’s nursing home care.
That much of the petition which seeks authorization for the guardian to make such a renunciation is opposed by the Nassau County Department of Social Services, the agency which has been paying medical assistance for Marie Baird’s nursing home care.
It is asserted that the proposed plan will keep a "potentially available resource” from helping to relieve "the plight of the dwindling funds available for fulfilling state imposed mandates.” Further, it is contended that "[b]y transferring a portion of her gift, the recipient diminishes her future estate and thereby frustrates the intent of the law for reimbursement out of the future estate of Marie Baird, if any.”
*529 In addition, the Nassau County Department of Social Services contends that the New York State Department of Social Services is a necessary party to this litigation.
The court disagrees with the argument of the Nassau County Department of Social Services which asserts that the New York State Department of Social Services is a necessary party to the proceeding.
Section 81.07 (d) of the Mental Hygiene Law specifies the parties entitled to notice of a Mental Hygiene Law article 81 proceeding. This includes, in section 81.07 (d) (1) (viii): "if it is known to the petitioner that the person alleged to be incapacitated receives public assistance * * * the local department of social services”. The State agency is not listed as an entity entitled to notice.
Apparently, the Legislature has deemed notice to local departments of social services sufficient to assure protection of the public interest regarding issues involving public assistance to alleged incapacitated persons. (Public assistance includes medical assistance [Social Services Law § 2 (18)].) The court discerns no reason in the present case why it is necessary to include the New York State Department of Social Services as a party when that is not generally required.
Aside from this procedural issue is the more significant substantive question of whether authorization for the proposed renunciation should be granted.
The court finds many of the points made by the Nassau County Department of Social Services persuasive.
It should be recalled that the primary concern of the court in a Mental Hygiene Law article 81 proceeding is the best interest of the incapacitated person. Underlying each determination as to whether a power should be granted or withheld from a guardian, therefore, is a consideration of how the exercise of such power would affect the alleged incapacitated person.
In this instance, the proposed authority to renounce an interest in an inheritance is of no obvious benefit to Marie Baird. By all indications Marie Baird will remain a resident of a nursing care facility for the remainder of her life. She will remain such a resident whether the services provided are paid for by her or from public funds.
In these times of strained public budgets it is a self-punishing public policy which allows the deliberately created neediness, of which the Nassau County Department of Social Services has *530 complained, thereupon burdening the public coffers with the cost of Marie Baird’s nursing home care when private funds, which will not otherwise benefit Marie Baird, are available to pay such costs.
Certainly it is rational to conclude that public policy should allow authorization to make gifts or renounce inheritances where the donees or alternative recipients of the funds are dependents of the incapacitated person. Here, however, there has been no showing that any of the three adult sons of Marie Baird who would be the alternative recipients of the funds are her dependents.
Responsible public policy should limit medical assistance payments to those who are genuinely in need. The mere availability of machinations by which private responsibility can be avoided at public expense should not compel the court to approve such avoidance in a knee-jerk fashion without a demonstrated benefit to the incapacitated person or to persons who are dependents of the incapacitated person. Where, as here, there is no direct and articulatable benefit to the incapacitated person or persons shown to be her dependents, the court should not be mandated to disregard the social impact of a decision which will artificially establish a need on the part of Marie Baird, and unnecessarily diminish scarce public resources.
The court urges the Legislature to recall and reinstate the original purpose of Medicaid and to structure rules and policies designed to assist those truly in need. Changing times, new financial realities and an honest recognition that there is a bottom to the public pocketbook may require that in the best interests of society there be greater limitations in the legislative generosity to individuals built into the current situation. Devices such as limited Medicaid penalty periods, and supplemental needs trusts permit the diversion of large sums of money from the payment of a person’s medical costs, by the deliberate impoverishment of the individual who, in many cases, may in reality remain the beneficiary of the diverted funds. Although our American Nation champions the rights of individuals, policymakers should not lose sight of the rights and interests of society. Laws which favor the individual, but damage society may prove to be of no ultimate benefit to anyone.
Notwithstanding the above-stated reasons as to why the court is in accord with the philosophical theme of the Nassau County Department of Social Services in opposing the application for authority to make the subject renunciation, the court is nevertheless compelled to grant to the guardian the requested authority to do so.
*531 Section 366 (5) (d) of the Social Services Law reflects that the New York Legislature has carefully established the detailed rules governing an institutionalized individual’s right to dispose of assets and the consequential effect upon such individual’s eligibility to receive Medicaid benefits. As this court stated in Matter of Daniels (162 Misc 2d 840, 843): "While one may choose to debate whether the authority of one to engage in Medicaid planning is sound public social or fiscal policy, less open to debate is the conclusion that the codified rules and policies to which Justice [Sebastian] Leone referred in Matter of Klapper [NYLJ, Aug. 9, 1994, at 26, col 1], authorize, if not encourage, such Medicaid planning.”
The proper analysis in this case must not focus on whether the granting of authority to effect the proposed renunciation reflects sound fiscal or social policy, but whether the granting of such authority in this factual setting is consistent with the legislative intent.
In Matter of Klapper (supra), Justice Leone observed:
"The fundamental policy underlying article 81 is to assist the incapacitated person to compensate for limitations and to provide the least restrictive alternative for him or her (see, Law Rev [Commn] Comments to Mental Hygiene Law § 81.03). In order to effectuate this policy, an incapacitated person should be permitted to have the same options available to him or her with respect to transfers of his or her property that are available to competent individuals.
"To deny a guardian the authority (where the requirements of Mental Hygiene Law § 81.21 are otherwise met) to make such transfer of the incapacitated person’s assets would result in denying that person the opportunity which is available to all competent persons of the State who require long-term nursing home care and who have assets they desire to gift to their families, simply because he or she is incapacitated and is unable from a cognitive standpoint to make such transfer himself or herself. Such a result would be in direct contravention of the expressed intention of article 81.”
This court notes additionally, that to deny an incapacitated person a statutory right available to another person, similarly situated except to the extent of having the capacity personally to make property management decisions would bear implications of denial of equal protection of the laws.
In the instant case the petitioner has proposed a partial renunciation of Marie Baird’s interest in the estate of Beatrice *532 A. Chemidlin, carefully calculated to reserve sufficient funds to pay for Marie Baird’s nursing home care during the resulting Medicaid "penalty” period, and allowing the remaining portion thereof to pass to her sons, Thomas Baird, Douglas Baird and Gregory Baird.
After such renunciation the funds available to pay for Marie Baird’s nursing home care will consist of $44,800 from the part of the inheritance not renounced, monthly Social Security payments for the seven-month "penalty period” of $1,354 totaling $9,478, and proceeds from an insurance policy totaling $10,067.20.
Before the court may grant the authority to make the subject renunciation it is required to consider the factors set forth in Mental Hygiene Law § 81.21 (d) and to make findings, established by clear and convincing evidence pursuant to Mental Hygiene Law § 81.21 (e).
With respect to the factors listed in Mental Hygiene Law § 81.21 (d) the record shows that Marie Baird does not have sufficient capacity to make the proposed renunciation herself (Mental Hygiene Law § 81.21 [d] [1]); it does not appear that there is any probability that Marie Baird will regain sufficient capacity to make a determination herself (Mental Hygiene Law § 81.21 [d] [2]); Marie Baird does not have any dependents to be adversely affected by the renunciation and her needs, with appropriate planning, will be met by Medicaid (Mental Hygiene Law § 81.21 [d] [3]); Thomas Baird, Douglas Baird and Gregory Baird who would benefit from the renunciation are all beneficiaries under the last will and testament of Marie C. Baird. The current petitioner, David Baird, who is also a beneficiary under the last will and testament of Marie Baird, will not benefit from the renunciation. He, however, is cognizant of that and has consented to the renunciation. Moreover, David Baird is, by a separate disposition, a beneficiary of Beatrice A. Chemidlin.
Accordingly, the proposed renunciation is not inconsistent with the known testamentary plan (Mental Hygiene Law § 81.21 [d] [4]) of Marie Baird inasmuch as all her sons will receive an inheritance from Beatrice A. Chemidlin.
Tax savings do not appear to be an issue (Mental Hygiene Law § 81.21 [d] [5]) but certainly saving the renounced portion of the inheritance from Beatrice A. Chemidlin for Marie Baird’s sons, without having such funds expended for Marie Baird’s nursing home care, is the key factor (see, Mental Hygiene Law § 81.21 [d] [6]).
*533 The record, therefore, supports the conclusions by clear and convincing evidence that Marie Baird lacks the requisite mental capacity to make the renunciation and is not likely to regain such capacity (Mental Hygiene Law § 81.21 [e] [1]); a competent, reasonable individual in the position of Marie Baird would be likely to make the subject renunciation (Mental Hygiene Law § 81.21 [e] [2]); and Marie Baird has manifested no prior intentions inconsistent with the proposed renunciation (Mental Hygiene Law § 81.21 [e] [3]).
The court is constrained to grant the authority sought. (E.g., Matter of Cooper [Daniels], NYLJ, Nov. 7, 1994, at 34, col 4; Matter of Beller [Maltzman], NYLJ, Aug. 31, 1994, at 23, col 4; Matter of Goldberg [Ginsberg], NYLJ, Aug. 31, 1994, at 24, col 1; Matter of Klapper, supra.)
After consideration of all the foregoing, the application is decided as follows:
The application by the petitioner, David Baird, to be appointed guardian for the property management and personal needs of Marie Baird is granted.
The guardian shall have the powers sought by the petitioner which include the authority to:
(a) renounce $40,000 of Marie Baird’s interest in the estate of Beatrice A. Chemidlin;
(b) invest moneys in a manner consistent with the prudent investor rule;
(c) marshal her assets;
(d) choose the place of abode;
(e) consent to or refuse generally accepted routine or major medical or dental treatment;
(f) apply for government and private benefits;
(g) determine who shall provide personal care or assistance.
The duration of the guardianship shall be indefinite and the guardian’s bond shall be in the amount of $65,000.