OPINION OF THE COURT
Frank S. Rossetti, J.
Application by cross petitioner Suffolk County Department of Social Services (DSS) for an order directing the guardian appointed herein to exercise the incapacitated person’s right of election against the estate of her deceased husband is granted.
On November 1, 1993, the alleged incapacitated person’s late husband (Anthony Mattel) established a revocable lifetime trust for himself. He and his daughter, Rose Mattel (petitioner), were its trustees, and his daughter was also the sole residuary beneficiary of the trust and the sole beneficiary (and executrix) of Anthony Mattel’s will executed the same day. The trust was funded by the family home (a condominium) and apparently almost all the rest of Mr. Mattel’s assets. Anthony Mattel’s wife, Loretta Mattel (the alleged incapacitated person), was then suffering from senile dementia and probable Alzheimer’s disease, and was living at home. The following month (Dec. 1993), Mr. Mattel applied for Medicaid for her and on January 5, 1994 he executed a "spousal refusal” (i.e., he declined to pay for any part of her care — see, Social Services Law § 366 [3] [a]). Subsequently, and despite having a home health care aide, Mr. Mattel became unable to care for his wife at home and on March 9, 1994 she was relocated to a nursing home. The same day her Medicaid application was approved retroactive to December 1, 1993.
On August 3, 1995, Anthony Mattel died. Since all his assets passed outside his will (i.e., they were either in said lifetime trust or in joint accounts), his will was not probated. DSS was informed of the foregoing (see, 18 NYCRR 360-2.3 [a] [2]; [c] [1], [3]) and requested that the nursing home apply for a guardianship for Mrs. Mattel in order to exercise her right of election against her husband’s estate (see, EPTL 5-1.1-A [c] [3] [E]). The apparent basis for this request was the obligation of a recipient of Medicaid to pursue available resources (see, at 991, infra). Loretta Mattel’s daughter Rose made such an application (to wit, the petition at bar), but did not include therein any request for authority to exercise her mother’s right of election. DSS accordingly cross-petitioned for appointment of an independent guardian (Rose Mattel’s petition indicated she wanted to be appointed guardian) with the power to exercise said right.
*991 This matter originally came before Hon. Daniel F. Luciano in Suffolk County Supreme Court, but, after taking substantial testimony, he recused himself. The matter was then referred to the undersigned and a hearing was held July 9, 1996. At that time, on the consent of all parties (and the Court Evaluator previously appointed by Justice Luciano), this court found Loretta Mattel incapacitated and appointed Rose Mattel guardian of her person and property. Decision was reserved, however, on the issue of whether the guardian should be directed to exercise the incapacitated person’s right of election.
As indicated, the basis for DSS’ claim that Mrs. Mattel’s right of election should be exercised is the regulatory obligation to pursue potential available resources (see, 18 NYCRR 360-2.3 [c] [1]; see also, Social Services Law § 366 [5] [e]). Available resources are now defined in terms of assets (compare, Social Services Law § 366 [5] [a], with § 366 [5] [d] [3]) and the significance thereof is that if an asset of a Medicaid recipient is transferred for less than fair market value, then the recipient will be ineligible for Medicaid for a period proportional to the uncompensated value of that asset (see,- Social Services Law § 366 [5] [d] [2], [3], [4]; 18 NYCRR 360-4.4 [c] [2]). Assets "mean * * * all income and resources of an individual * * * including income or resources to which the individual * * * is entitled but which are not received because of action by * * * a person * * * or * * * court * * * with legal authority to act in place of or on behalf of the individual.” (Social Services Law § 366 [5] [d] [1] [i]; see, 18 NYCRR 360-4.4 [c] [2] [i] [a] [2], [4].) DSS’ basic position is the incapacitated person’s right of election is an asset and, whether exercised or not, it will render Mrs. Mattel ineligible for what could be as much as a year. She has only insignificant resources and a monthly income of about $925 from Social Security and a pénsion from her late husband. Hence, absent Medicaid, it does not appear Loretta Mattel will be able to pay for the nursing home care she is presently receiving for any significant period of ineligibility.
An important factor here is the probable effect the failure to exercise the incapacitated person’s right of election will have on Mrs. Mattel and her well-being. Petitioner relies, inter alia, on Matter of Street (162 Misc 2d 199) as authority for denial of DSS’ request for exercise of said right of election, but that case is inapposite or in error in various respects. First, the fiduciary in Street was a guardian ad litem in a Surrogate Court decedent estate proceeding and the court there contrasted his authority with the more extensive power of a committee or conservator *992 (see, supra, at 201), predecessors to the guardian under article 81 of the Mental Hygiene Law. Second, the court in Street indicated that incompetents should not be treated the same as competent individuals (see, supra, at 201-202). However, this is contrary to both the spirit and philosophy of article 81 (see, Mental Hygiene Law § 81.01), and the case law thereunder (see, e.g., Matter of Baird, 167 Misc 2d 526, 531; Matter of Daniels, 162 Misc 2d 840, 843, 844-845; Matter of Parnes, NYLJ, Nov. 2, 1994, at 32, cols 2, 3-4). Simple fairness dictates that if Medicaid planning can be authorized for incapacitated persons the same as competent individuals (see, Matter of Baird, supra; Matter of Daniels, supra; Matter of Parnes, supra), then such persons should also be subject to the obligations and restrictions of Medicaid the same as competent individuals. The applicable obligation here is to pursue available resources (see, at 991, supra). Hence, to whatever extent said rationale in Street had merit there, it has none here.
Finally, the court in Street (supra) found that nothing would change in the incompetent husband’s care if the government request were granted and that it did not want to speculate on his continued Medicáid eligibility. It concluded that "[n]othing before the court indicates that it is in the best interests of [the husband] to * * * exercise * * * his right of election” (Matter of Street, supra, at 202). We find this conclusion questionable. The husband’s care may not have changed if said right were exercised,[1] but if it were not, his care could change very drastically (i.e., such could be reduced or even terminated for nonpayment). The court in Street may not have wanted to speculate as to the incompetent’s eligibility, but such was obviously critical to the latter’s interests, best or otherwise. The risk to the would-be Medicaid recipient from the court’s action or inaction should not be ignored or disregarded. Here the interests and well-being of the incapacitated person are paramount, and while the desire to provide for one’s children may be considered, such should not be given controlling weight where there are potential adverse consequences to the incapacitated person (see, Mental Hygiene Law § 81.21 [b] [2]; [d] [3], [4]). If not exercised, there is a substantial probability Loretta Mattel’s Medicaid benefits will be reduced or terminated because of her right of election (cf., Social Services Law § 366 [5] [d] [3] [iv]; 18 NYCRR 360-4.4 [c] [2] [iii] [e]). In the analogous albeit converse situation of renouncing an inheritance, it has been indicated *993 that cases allowing renunciation but not considering Medicaid consequences are not controlling. (See, Matter of Molloy v Bane, 214 AD2d 171, 176.) Additionally, the one lower court case permitting renunciation and expressly considering Medicaid was explicitly overruled by the Appellate Division. (See, supra.) Based on the foregoing, we do not find the Street case to be authority for petitioner’s position.
The power of this court or the guardian appointed herein to de facto renounce the incapacitated person’s right of election is not truly the issue at bar (see, at 990, supra). Rather, the critical question is the consequences of such inaction (see, n 2, infra, at 994), irrespective of its legality. (Cf., Matter of Molloy v Bane, supra, at 174-175; Matter of Scrivani, 116 Misc 2d 204, 208.) The test relative to Medicaid is the availability of this resource (see, Matter of Flynn v Bates, 67 AD2d 975, 977, lv denied 48 NY2d 606), and the 1994 amendments to the applicable statute and regulation make it clear that if a Medicaid recipient is entitled to an asset, action or inaction by a guardian or court which negates the individual’s rights thereto does not make it unavailable (see, at 991, supra; L 1994, ch 170, § 450). Hence, we find problematic the gloss petitioner would have us put on prior case law to the effect that a refusal to pursue available resources must be knowingly and intentionally made by the recipient herself, and such a would-be extension of prior law is plainly refuted by current law in any event. Said current law is consistent with the principles that Medicaid should be limited to the needy and that need will not be found where created by refusing available resources. (See, Matter of Molloy v Bane, supra, at 174, 176; Matter of Flynn v Bates, supra; Matter of Tutino v Perales, 153 AD2d 181, 186, appeal dismissed 75 NY2d 1004, lv denied 76 NY2d 705; Matter of Harrington v Blum, 117 Misc 2d 623, 624-625.) That such manufactured need is the product of persons or entities acting for or on behalf of the recipient should legally make no difference, and said current law so provides. In fact, if anything, this court should uphold the applicable legal obligations in accordance with both the letter and spirit of the law. As indicated, the courts have authorized the use of Medicaid planning for the benefit of incapacitated persons where such planning is intended by applicable law. We should not go beyond that and permit incapacitated persons to do, via guardians, what competent persons cannot do contrary to the provisions and intent of said law.
Petitioner also attempts to draw a distinction between an inheritance and a right of election, but under said current law *994 both are assets and the transfer thereof results in ineligibility (see, Social Services Law § 366 [5] [d] [1], [3]). Admittedly, in some situations it may be difficult to fix the time of a transfer effected by the nonexercise of a right of election (cf., Matter of Flynn v Bates, supra), but here a court denial of DSS’ specific request would certainly provide an appropriate date (see, Social Services Law § 366 [5] [d] [4]).[2] Practically, within the concepts of availability and entitlement (see, at 991, 993, supra), we find no functional difference between the renunciation of an inheritance and the nonexercise of a right of election. Both these rights of inheritance are assets which are receivable through action or inaction (see, n 2, supra), and we thus find the case law with respect to the renunciation of inheritances applicable to the nonexercise of rights of election (see, Matter of Molloy v Bane, supra; Matter of Scrivani, supra; see also, Matter of Flynn v Bates, supra). Therefore, we find persuasive DSS’ position that the instant incapacitated person can be found ineligible for Medicaid because of her right of election and that without the exercise thereof she will be without funds to make up for the loss of Medicaid benefits.
The final determination involves the factors required to be considered and the findings required to be made for a transfer under Mental Hygiene Law § 81.21. From the nature of her condition (see, at 990, supra) and the evidence on which our finding of incapacity was based, it is clear Loretta Mattel lacks the requisite mental capacity to exercise the right of election herself and will not likely regain such capacity in the foreseeable future (see, Mental Hygiene Law § 81.21 [d] [1], [2]). As indicated, said transfer is necessary to insure that Mrs. Mattel’s nursing home care will be maintained during the period of ineligibility resulting from her right of election, and we do not believe it prudent to give weight to speculative, discretionary possibilities (see, 18 NYCRR 360-4.4 [c] [2] [iii] [ej). However, since she does have some monthly income (see, at 991, supra), it does not appear her entire elective share will be needed for that care, even after allowance for burial and luxury funds (see, Social Services Law § 366 [2] [a] [3], [4]; 18 NYCRR 360-4.6 [b] [1] [ii]; 360-4.7 [a] [4]; [b] [1]; Matter of Baird, 167 Misc 2d 526, 531-532, supra). The exact amount needed for said care *995 and funds cannot be determined on this record, but presumably petitioner and DSS can agree on the appropriate computations (see, Matter of Baird, supra). As the only child, Rose Mattel is obviously a natural object of her mother’s bounty and there is no indication of any testamentary plan[3] or pattern of gifts inconsistent with Rose’s receipt of as much as can be spared beyond her mother’s needs (see, Mental Hygiene Law § 81.21 [d] [3], [4]). There do not appear to be any tax consequences (see, Mental Hygiene Law § 81.21 [d] [5]) and, the only other factor relevant to this transfer is the obligation of a citizen to act in accordance with law (see, Mental Hygiene Law § 81.21 [d] [6]).. Nonetheless, as indicated (see, at 991-992, 993, supra), we consider this an important factor.
Therefore, we find by clear and convincing evidence that: (1) Loretta Mattel lacks the requisite mental capacity to make this transfer now or in the foreseeable future; (2) a competent, reasonable person in her position would want to assure the continuation of her care, without unnecessary risk and in accordance with law, and thus would exercise said right of election, albeit only to the extent necessary so as to maximize the amount left for her only child; and (3) there is no evidence of any manifested intent by the incapacitated person before her incapacity to sacrifice her own well-being and violate the law for the limited financial gain of her daughter on one hand, or to deprive her daughter of funds not necessary for her (the incapacitated person’s) care and well-being on the other. (See, Mental Hygiene Law § 81.21 [e].) Consequently, we find the subject right of election should be exercised to the extent necessary to provide for the period of Medicaid ineligibility resulting therefrom, and for permitted Medicaid funds (see, at 994, supra).
Against the possibility the court might find that the incapacitated person’s right of election should be exercised, it was agreed that petitioner’s attorneys should place $60,000 of the proceeds of the sale of Mr. Mattel’s home in escrow (as sole residuary beneficiary of the trust holding title to said condominium [see, at 990, supra], petitioner was entitled to said proceeds, subject to her mother’s right of election).[4] With this source of money in place, it is not necessary for the guardian to go through the expense and effort of a Surrogate’s Court proceed *996 ing to formally exercise said right. Rather, we can simply deem the right of election exercised (see, Mental Hygiene Law § 81.21 [a] [9]; see also, EPTL 5-1.1-A [d] [1]) and have the appropriate amount transferred to provide for said Medicaid ineligibility and said Medicaid funds.
Accordingly, it is ordered, that within 30 days of service on petitioner of a copy of this order, with notice of entry, she shall submit to the court a proposed order and judgment embodying the essential terms of the court’s determinations made July 9, 1996 and herein, and it is further ordered, that the guardian shall be deemed to have exercised Loretta Mattel’s right of election against her deceased husband’s estate in an amount to be agreed on by petitioner and the Suffolk County Department of Social Services or, absent an agreement, in an amount to be determined by the court on the basis of submissions by said parties, as hereafter directed, and it is further ordered, that within said 30-day period, (1) petitioner shall submit to the court a stipulation between her and DSS as to (a) the amount necessary to continue Loretta Mattel’s existing care during the period of Medicaid ineligibility resulting from said right of election, and to establish permitted Medicaid burial and luxury funds, and (b) how and to whom such shall be paid, together with an affidavit explaining the bases and calculations pertaining thereto, and petitioner shall include the essential terms of said stipulation in the aforesaid proposed order and judgment, or, if the aforesaid stipulation cannot be agreed to, (2) petitioner and DSS shall submit to the court affidavits explaining their differences and the bases for their respective calculations and conclusions to enable the court to make a determination as to said amount and manner of payment, and it is further ordered, that the court shall issue an appropriate order upon submission of either of the foregoing, directing payment of said amount from the escrow heretofore established therefor, with any amounts remaining therein to be paid to petitioner.

. If exercised, there would have been funds available to pay for his care during any period of ineligibility.

. While such a denial would constitute action within the statute, even a mere failure to exercise said right would constitute inaction prescribed by regulation (see, 18 NYCRR 360-4.4 [c] [2] [i] [a]), a regulation we find reasonable and consistent with the controlling statute (see generally, 2 NY Jur 2d, Administrative Law, §§ 102, 104).

. Apparently Loretta Mattel has no will.

. Said revocable trust and Mr. Mattel’s noted joint accounts (see, at 990, supra) were testamentary substitutes to which Mrs. Mattel’s right of election applies. (See, EPTL 5-1.1-A [b] [1] [D], [F].)